**OAK TREE LAW**
Julie Villalobos, Esq., SBN 263382
*Julie@oaktreelaw.com*
Larry Fieselman, Esq. SBN 81872
*larry@oaktreelaw.com*
10900 183rd Street, Suite 270
Cerritos, California 90703
Telephone: (562) 741-3943
Facsimile: (562) 264-1496

Attorneys for SUPERIOR BOILER REPAIR, INC.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

SUPERIOR BOILER REPAIR, INC.,

    Debtor.

Ch. 11 no. 2:18-BK-13505-SK

**DEBTOR IN POSSESSION'S MOTION FOR ORDER: (1) APPROVING SALE OF REAL PROPERTY; (2) APPROVING PAYMENT OF REAL ESTATE COMMISSION AND OTHER RELATED COSTS; DECLARATION OF OMAR GAMARRA**

Date: July 18, 2018
Time: 10:00 a.m.
Ctrm: 1575

    The Debtor-in-Possession, Superior Boiler Repair, Inc., moves the court for an order authorizing the sale of its real property at 8204 Garfield Avenue, Bell Gardens CA, and in support thereof alleges as follows:

## **INTRODUCTION**

Superior Boiler Repair, Inc., debtor and debtor-in-possession in this matter and hereinafter referred to as "Debtor", is the owner of the improved real property at 8204 Garfield Avenue, Bell Gardens, CA, hereinafter referred to as "the subject property". The legal description of the subject property is attached hereto as Exhibit "1" to the Declaration of Omar Gamarra ("Gamarra Declaration") and is incorporated herein by reference, as though fully set forth. Please see the Gamarra Declaration, paragraph 2.

As set forth in more detail below, Debtor seeks court approval to sell the subject property to the purchaser for a purchase price of $1,365,000.00 ("the purchase price"). The subject property will be sold and the obligations secured against it will be paid in full.

The subject property is encumbered by the following liens:

a. Note secured by deed of trust in favor of Opus Bank - $1,170,029.61

Please see the Gamarra Declaration, paragraph 5.

The subject property is the location at which the Debtor carried on its business. However, shortly prior to the filing of the within Chapter 11 petition, the Debtor ceased all business operations and has not conducted business thereat since the filing. Please see the attached Gamarra Declaration, paragraph 2.

If this motion is granted, the subject property will be sold, liens will be paid off in full and the Debtor will file its Disclosure Statement and Plan of Reorganization.

In addition to approval of the sale, Debtor seeks court approval for the payment of real estate commissions and costs incurred in connection therewith.

The granting of the Debtor's motion is in the best interest of the creditors of the estate and the Debtor.

//

## II.

## SALE MOTION

The Debtor filed for protection under Chapter 11 of the Bankruptcy Code on March 29, 2018. Please see the attached Declaration of Omar Gamarra, paragraph 3.

The Debtor is a corporation and title to the subject property is in the Debtor's name.

a. **The Proposed Sale.**

The legal description of the subject property is attached hereto as Exhibit "1" and is incorporated herein by this reference, as though fully set forth. The legal description is believed to be accurate, but may be corrected or updated by the title company in the transfer documents as necessary to complete the proposed sale transaction. The subject property is held in the name of the Debtor, Superior Boiler Repair, Inc. Please see the attached Gamarra Declaration, paragraph 2.

The Debtor has entered into a *STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTION FOR PURCHASE OF REAL ESTATE*, a copy of which is attached as Exhibit "2" to the Declaration of Omar Gamarra.

The principle terms of the sale are as follows:

1. Purchaser: R. F. Holdings, LLC;

2. Purchase price: $1,365,000.00;

3. Escrow agent: Everest Escrow;

4. Escrow officer:  Jennifer Stipe;

5. Real estate commission: Realty One Group/Jeremie Tavisola.

Please see Declaration of Omar Gamarra, paragraph 10.

A copy of the escrow instructions is attached to the Gamarra Declaration as Exhibit "3" and is incorporated herein by this reference, as though fully set forth. A copy of the Estimated Settlement Statement is attached to the Gamarra Declaration as Exhibit "4" and is incorporated herein by this reference, as though fully set forth. A copy of the

## II.

## SALE MOTION

The Debtor filed for protection under Chapter 11 of the Bankruptcy Code on March 29, 2018. Please see the attached Declaration of Omar Gamarra, paragraph 3.

The Debtor is a corporation and title to the subject property is in the Debtor's name.

a. **The Proposed Sale**.

The legal description of the subject property is attached hereto as Exhibit "1" and is incorporated herein by this reference, as though fully set forth. The legal description is believed to be accurate, but may be corrected or updated by the title company in the transfer documents as necessary to complete the proposed sale transaction. The subject property is held in the name of the Debtor, Superior Boiler Repair, Inc. Please see the attached Gamarra Declaration, paragraph 2.

The Debtor has entered into a *STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTION FOR PURCHASE OF REAL ESTATE*, a copy of which is attached as Exhibit "2" to the Declaration of Omar Gamarra.

The principle terms of the sale are as follows:

1. Purchaser: R. F. Holdings, LLC;

2. Purchase price: $1,365,000.00;

3. Escrow agent: Everest Escrow;

4. Escrow officer:  Jennifer Stipe;

5. Real estate commission: Realty One Group/Jeremie Tavisola.

Please see Declaration of Omar Gamarra, paragraph 10.

A copy of the escrow instructions is attached to the Gamarra Declaration as Exhibit "3" and is incorporated herein by this reference, as though fully set forth. A copy of the Estimated Settlement Statement is attached to the Gamarra Declaration as Exhibit "4" and is incorporated herein by this reference, as though fully set forth. A copy of the

payoff demand from Opus Bank is attached to the Gamarra Declaration as Exhibit "5" and is incorporated herein by this reference, as though fully set forth.

### b. **Treatment of Liens and Encumbrances Under the Sale**

The subject property will be sold with a pay-off of the liens and encumbrances by the sellers through escrow with the proceeds of the sale. See the Gamarra Declaration, paragraph 7.

To the best of the Debtor's knowledge and belief, the sale will generate a capital gain of less than $100,000.00 which would require the payment of a capital gains tax of approximately $15,000.00, or less. Please see the Declaration of Omar Gamarra, paragraph 13.

### c. **Approval of the Sale is in the Best Interests of the Estate.**

The Debtor believes that the proposed sale is in the best interests of the estate and will maximize the return to creditors. Because the debtor's business has experienced a sharp decline over the past two years it has been unable to meet its obligations and the sale of the property and wind up of the business is its best, and only, alternative. Thus, good cause exists to grant this motion.

### III.

### MEMORANDUM OF POINTS AND AUTOHRITIES

### a. **The Court May Approve a Sale Where There is a Good Faith Purchaser**.

Pursuant to *11 U.S.C. §363*, the Debtor, after notice and hearing, may sell property of the estate. The standards to establish good cause for the sale are (1) the sale is a sound business decision, (2) is in the best interests of the estate, (3) is fair and reasonable in price and terms, (4) accurate and reasonable notice to creditors, (5) and the sale is in good faith. *In re Wilde Horse Enterprises*, 136 B.R. 841 (Bankr. C.D. Cal. 1991); In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983). Business justification would include the need to close a sale to one of very few serious bidders and where such sale would result in a full payout to creditors.

1. <u>The Sale is Based Upon a Sound Business Decision</u>.

Because the business of the Debtor, primarily the repair of boilers, has fallen off in the last two years to such an extent that the Debtor could not continue to operate, there is only one alternative left available to the Debtor, and that is to sell the subject property, pay off the liens and other encumbrances, and move on.

2. <u>The Sale is in the Best Interests of the Estate</u>.

Absent the sale, as proposed herein, the holder of the note secured by the deed of trust in first position would foreclose, wiping out the holder of the second deed of trust and leaving nothing for unsecured creditors. The sale, as proposed herein, will result in full payment to all creditors.

3. <u>The Terms of the Sale are Fair and Reasonable</u>.

Because all creditors will be paid in full, the terms of the sale are, per se, fair and reasonable. The purchase is not related to the seller or its principle by blood, marriage, business relationship or otherwise. This is a good faith sale for fair market value.

4. <u>Accurate and Reasonable Notice Has Been Given to Creditors</u>.

The terms of the sale have been accurately communicated to creditors. Creditors have received proper notice pursuant to the local rules as reflected in the attached Proof of Service.

5. <u>The Sale is Proposed in Good Faith</u>.

As set forth hereinabove, the subject property is being sold at fair market value to a bona fide purchase for value not related to the principle of the debtor in any manner. This is an arms-length transaction. It is in the best interests of the estate, the creditors and the Debtor.

The court in *Wilde Horse Enterprises* set forth the factors in considering whether a transaction is in good faith. The court stated:

" 'Good Faith' encompasses fair value, and further speaks to the integrity
of the transaction. Typical 'bad faith' or misconduct, would include collusion
between the seller and buyer, or any attempt to take unfair advantage of other

potential purchases . . . And, with respect to making such determinations, the court and creditors must be provided with sufficient information to allow them to take a position on the proposed sale." Citations omitted.

*Id.* At 842.

In the present case, the negotiation of the proposed sale was an arms-length transaction. The negotiations with the buyer have resulted in an offer to sell that will have the ultimate benefit for the creditors. As set forth in the attached Proof of Service, the motion has been served on all the creditor and other interested parties and those required to receive notice. Therefore, the sale is in good faith and should be approved. The Debtor requests a finding of good faith pursuant to *11 U.S.C. §363(m)*.

b. **The Sale Does Not Contravene Public Policy**.

As early as 1981 a court held that:

"As to whether the sale by a trustee of all the Debtor's assets must take place in the context of a confirmed reorganization plan, the case law again is clear that there is nothing objectionable about a sale of all the assets outside of a Chapter 11 Plan."

*In re WHEY, Inc.,* 12 B.R. 743, 750 (Bankr. D. Mass. 1981).

Consistent with this, the fifth circuit decision in *In re Braniff Airways, Inc.,* 700 F. 2d 935 (5th Cir. 1983), disapproved an asset sale because the transaction at issue involved much more than a sale of property in that the documents significantly limited the debtor's reorganization options. *Id. At 939*.

In this case the sale of the subject property would pay off creditors in full and avoid the need for a Chapter 11 Plan and a longer wait by creditors to receive their payments.

This sale does not conflict with underlying bankruptcy policy. See, *In re Brethren Care of South Bend, Inc.*, 98 B.R. 927, 934 (Bankr. N.D. Ind. 1989), which held that the sale provide certainty for the tenants and the only feasible plan was liquidation. In this

case, the only feasible plan is a sale of the property since the continuation of the business is not possible.

c. **The Court Has Authority to Waive the Ten-day Stay of Sale**.

*Federal Rule of Bankruptcy Procedure,* §6004(g), provides that "an order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of ten day after the order, unless the Court orders otherwise."

This is an appropriate case for the waiver of the ten day rule in that such waiver will facilitate an earlier payoff creditors than if the rule is not waived.

## IV.

## THIS SALE IS SUBJECT TO OVERBID

This sale is subject to overbid, as follows: The initial overbid must be in an amount at least five (5%) more than the current sale price. The overbidder must appear at the hearing and provide proof of availability of funds to the satisfaction of the court. Thereafter, the overbidder must deposit those funds in escrow within five (5) days after the hearing.

If an overbid is approved and accepted and, thereafter, the overbidder is either unable or unwilling to complete the sale, the property shall then be sold to the next highest bidder, whether that be another overbidder or the original offeror.

## V.

## CONCLUSION

Based upon the foregoing, the Debtor respectfully submits that good cause exists for granting this motion and respectfully requests that the court enter an order as follows:

1. Approving the Sale and Purchase Agreement related to the subject property which is attached to the Declaration of Omar Gamarra as Exhibit "2";

2. A determination by the court that the Debtor and purchaser are acting in good faith with respect to the sale, pursuant to 11 U.S.C. §363(m);

3. Waiver of the ten-day stay of the order approving the sale of the subject property pursuant to Federal Rules of Bankruptcy Procedure, §6004(g);

4. Authorization of the payment of real estate commission and all other costs of sale;

5. For such other and further relief as the court deems just and proper.

Dated: June 15, 2018.

OAK TREE LAW

by: 

LARRY FIESELMAN
Attorney for Debtor-in-Possession

## DECLARATION OF OMAR GAMARRA:

I, OMAR GAMARRA, declare that:

1. I am the president and Chief Executive Office of the Debtor herein. The following statements are made from my personal knowledge. If called upon to testify I could and would competently testify to the facts as herein set forth.

2. This declaration is being submitted in support of the attached motion to sell the real property owned by the Debtor and upon which the Debtor conducted its business operations.

3. The Debtor filed this Chapter 11 petition on March 29, 2018.

4. The Debtor seeks approval from this court to sell the subject property at 8204 Garfield Avenue, Bell Gardens CA, for $1,365,000.00. The legal description of the subject property is attached hereto as Exhibit "1" and is incorporated herein by reference, as though fully set forth.

5. The subject property is encumbered by the following liens:

   a.  Note secured by deed of trust in first position - $1,170,029.61.

6. The Debtor ceased doing business shortly before the filing of the bankruptcy and has not done business since the filing.

7. If this motion is granted the subject property will be sold and all liens and encumbrances against the property will be paid in full.

8. The Debtor also seeks approval for the payment of real estate commissions of six (6%) percent to Realty One and Jeremie Tavisola.

9. A copy of the *STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTION FOR PURCHASE OF REAL ESTATE* is attached hereto as Exhibit "2" and is incorporated herein by this reference, as though fully set forth. A copy of the escrow instructions is attached hereto as Exhibit "3" and is incorporated herein by this reference, as though fully set forth. A copy of the Estimated Settlement Statement is attached hereto as Exhibit "4" and is incorporated herein by this reference, as though fully set forth. A copy of the

payoff demand from Opus Bank is attached hereto as Exhibit "5" and is incorporated herein by this reference, as though fully set forth.

10. The principle terms of the sale are as follows:

    a. Purchaser: F. R. Holdings, LLC;

    b. Purchase price: $1,365,000.00;

    c. Escrow agent: Everest Escrow;

    d. Escrow officer: Jennifer Stipe;

    e. Real estate commission: Realty One Group/Jeremie Tavisola.

11. This sale is in the best interests of the estate and creditors in that all creditors will be paid in full.

12. Neither I, nor any of the other persons involved in the Debtor's business, had any previous relationship with the buyer. This is an arms length transaction for fair market value proposed in good faith.

13. To the best of my knowledge and belief, the sale will generate a capital gain of less than $100,000.00 which would require the payment of a capital gains tax of approximately $15,000.00, or less.

14. I also ask the court to waive the ten day rule and allow the escrow to close as soon as possible after court approval.

15. I respectfully ask the court to grant this motion and for such other and further relief as the court deems just and proper.

//

1      I declare, under penalty of perjury, that the foregoing is true and correct. Executed

2  at Bell Gardens CA on June 18, 2018.

OMAR GAMARRA

# EXHIBIT "1"

LOTS 10 AND 11, IN BLOCK 1, OF TRACT NO. 10878, IN THE CITY OF BELL GARDENS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 192, PAGES 3, 4 AND 5 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT 50 PERCENT OF ALL OIL, GAS, ASPHALTUM AND OTHER HYDROCARBON SUBSTANCES UNDERLYING SAID LAND OR THEREAFTER MAY BE PRODUCED THEREON OR THEREFROM, AS RESERVED BY SECURITY-FIRST NATIONAL BANK OF LOS ANGELES AS TRUSTEE UNDER ITS DECLARATION OF TRUST NO. D-6988, RECORDED IN BOOK 20355, PAGE 342 OF OFFICIAL RECORDS.

ALSO EXCEPTING 25 PERCENT OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN, UNDER OR ON SAID LAND THAT MAY BE PRODUCED FROM A DEPTH BELOW 100 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITHOUT THE RIGHT OF SURFACE ENTRY, IN DEED RECORDED MAY 14, 1958 AS INSTRUMENT NO. 235, OF OFFICIAL RECORDS.

APN:  6230-028-017

# EXHIBIT "2"



## STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS
## FOR PURCHASE OF REAL ESTATE
*(Non-Residential)*

Dated: **May 29, 2018**

**1. Buyer.**

1.1        **F.R. Holdings, LLC.** , ("**Buyer**") hereby offers to purchase the real property, hereinafter described, from the owner thereof ("**Seller**") (collectively, the "**Parties**" or individually, a "**Party**"), through an escrow ("**Escrow**") to close 30 or **30** days after the waiver or expiration of the Buyer's Contingencies, ("**Expected Closing Date**") to be held by **Everest Escrow Inc.** ("**Escrow Holder**") whose address is **2701 Loker Ave W #148, Carlsbad, CA 92010** , Phone No. **(760)607-3240** , Facsimile No. **(760)683-6537** upon the terms and conditions set forth in this document ("**Agreement**"). Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

1.2   The term "**Date of Agreement**" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to purchase, the Property upon terms accepted by both Parties.

**2. Property.**

2.1   The real property ("**Property**") that is the subject of this offer consists of (insert a brief physical description) **A one story 4,000 sqft Warehouse built in 1979 on 19,098 sq ft of land w/zoning of BGCM inc. approx 2,790 sq ft Mezzanine & attached container storage configured for 1,600 sq ft of 2 floors of Storage** is located in the City of **Bell Gardens** , County of **Los Angeles** , State of **CA** , is commonly known by the street address of **8204 Garfield Ave** and is legally described as: **Tr=10878 Lots 10 And Lot 11 (abbreviated), attached as Exhibit A See Preliminary Title Report** (APN: **6230-028-017** ).

2.2   If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of **First American Title Company** ("**Title Company**"), which shall issue the title policy hereinafter described.

2.3   The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: electrical distribution systems (power panel, bus ducting, conduits, disconnects, lighting fixtures); telephone distribution systems (lines, jacks and connections only); space heaters; heating, ventilating, air conditioning equipment ("**HVAC**"); air lines; fire sprinkler systems; security and fire detection systems; carpets; window coverings; wall coverings; and **Mezzanine and Attached Container Storage, 2 floor deck containing the Storage Containers.**

(collectively, the "**Improvements**").

2.4   The fire sprinkler monitor: ☐ is owned by Seller and included in the Purchase Price, ☐ is leased by Seller, and Buyer will need to negotiate a new lease with the fire monitoring company, ☐ ownership will be determined during Escrow, or ☒ there is no fire sprinkler monitor.

2.5   Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and all of which shall be removed by Seller prior to Closing.

**3. Purchase Price.**

3.1   The purchase price ("**Purchase Price**") to be paid by Buyer to Seller for the Property shall be $ **1,365,000.00** , payable as follows:

    (a)   Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash transaction, the Purchase Price):        $     **136,500.00**

*(Strike if not applicable)*   (b)   Amount of "New Loan" as defined in paragraph 5.1, if any:        $     **1,228,500.00**

    ~~(c)~~   ~~Buyer shall take title to the Property subject to and/or assume the following existing deed(s) of trust ("**Existing Deed(s) of Trust**") securing the existing promissory note(s) ("**Existing Note(s)**"):~~

```
RR
INITIALS
```

**PAGE 1 OF 11**

```
INITIALS
```

© 2017 AIR CRE. All Rights Reserved.
                                             **OFA-20.00, Revised 01-03-2017**

Realty ONE Group 1260 Corona Point Court, Suite 102 Corona, CA 92879
Phone: 949-689-4829     Fax: 858-836-5716     JEREMIE TAVISOLA                       FR Holdings IN

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

|  |  |  |
|---|---|---|
| (Strike if not applicable) | (i) ~~An Existing Note ("First Note") with an unpaid principal balance as of the Closing of approximately:~~<br>~~Said First Note is payable at $ _____ per month, including interest at the rate of _____ % per annum until paid (and/or the entire unpaid balance is due on _____ ).~~ | $ _____ |
| (Strike if not applicable) | (ii) ~~An Existing Note ("Second Note") with an unpaid principal balance as of the Closing of approximately:~~<br>~~Said Second Note is payable at $ _____ per month, including interest at the rate of _____ % per annum until paid (and/or the entire unpaid balance is due on _____ ).~~ | $ _____ |
| (Strike if not applicable) | (d) ~~Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the property, to secure the promissory note of Buyer to Seller described in paragraph 6 ("Purchase Money Note") in the amount of:~~ | $ _____ |

Total Purchase Price:     $   1,365,000.00

3.2   If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.

**4.   Deposits.**

4.1   ☐ Buyer has delivered to Broker a check in the sum of $ _____ , payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder, or ☐ within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver to Escrow Holder a check in the sum of $ 136,500.00 . If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2   Additional deposits:

(a)   Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of $ _____ to be applied to the Purchase Price at the Closing.

(b)   Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (m) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of $ _____ to be applied to the Purchase Price at the Closing.

(c)   If an Additional Deposit is not received by Escrow Holder within the time period provided then Seller may notify Buyer, Escrow Holder, and Brokers, in writing that, unless the Additional Deposit is received by Escrow Holder within 2 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

4.3   Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the **"Deposit"**), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____ . NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

4.4   Notwithstanding the foregoing, within 5 days after Escrow Holder receives the monies described in paragraph 4.1 above, Escrow Holder shall release $100 of said monies to Seller as and for independent consideration for Seller's execution of this Agreement and the granting of the contingency period to Buyer as herein provided. Such independent consideration is non-refundable to Buyer but shall be credited to the Purchase Price in the event that the purchase of the Property is completed.

4.5   Upon waiver of all of Buyer's contingencies the Deposit shall become non-refundable but applicable to the Purchase Price except in the event of a Seller breach, or in the event that the Escrow is terminated pursuant to the provisions of Paragraph 9.1(n) (Destruction, Damage or Loss) or 9.1(o) (Material Change).

**5.   Financing Contingency.   (Strike if not applicable)**

5.1   This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least   90,000   % of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan (**"New Loan"**) shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2   Buyer hereby agrees to diligently pursue obtaining the New Loan. **If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within   45   days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived this New Loan contingency.**

5.3   If, after due diligence, Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

**6.   Seller Financing** (Purchase Money Note).   (Strike if not applicable)

6.1   ~~If Seller approves Buyer's financials (see paragraph 6.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of _____ % per annum, with principal and interest paid as follows: _____~~

INITIALS
© 2017 AIR CRE.  All Rights Reserved.

INITIALS
OFA-20.00, Revised 01-03-2017
FR Holdings IN

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

~~The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.~~

~~6.2  The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):~~

~~(a)  Prepayment.  Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.~~

~~(b)  Late Charge.  A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~

~~(c)  Due On Sale.  In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.~~

~~6.3  If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.~~

~~6.4  WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.~~

~~6.5  Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the right, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.~~

**7.    Real Estate Brokers.**

7.1  The following real estate broker(s) (**"Brokers"**) and brokerage relationships exist in this transaction and are consented to by the Parties (check the applicable boxes):

| | | |
|---|---|---|
| ☐ | _____ Realty ONE Group _____ | represents Seller exclusively (**"Seller's Broker"**); |
| ☐ | _____ Realty ONE Group _____ | represents Buyer exclusively (**"Buyer's Broker"**); or |
| ☒ | _____ Realty ONE Group _____ | represents both Seller and Buyer (**"Dual Agency"**). |

The Parties acknowledge that other than the Brokers listed above, there are no other brokers representing the Parties or due any fees and/or commissions under this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

7.2  Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers named in paragraph 7.1, and no broker or other person, firm or entity, other than said Brokers is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party, other than said named Brokers by reason of any dealings or act of the indemnifying Party.

**8.    Escrow and Closing.**

8.1  Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions. In the event that there is any conflict between the provisions of the Agreement and the provisions of any additional escrow instructions the provisions of the Agreement shall prevail as to the Parties and the Escrow Holder.

8.2  As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

8.3  Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

8.4  Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the **"Closing"**) by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

8.5  Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11)

8.6  Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 9.5, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

DocuSign Envelope ID: 0C8E30F3-092B-439B-8CE4-53729D6DA0BB

8.7    If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall, subject to the provisions of paragraph 8.10, be promptly refunded all funds deposited by Buyer with Escrow Holder, less only the $100 provided for in paragraph 4.4 and the Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

8.8    The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

8.9    Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

8.10    If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to deliver any such report if the written contract which Buyer entered into with the consultant who prepared such report specifically forbids the dissemination of the report to others.

**9.    Contingencies to Closing.**

9.1    The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. **IF BUYER FAILS TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT.** Buyer's conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by the Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives. With regard to subparagraphs (a) through (m) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a)    *Disclosure.* Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR Commercial Real Estate Association (**"AIR"**) standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet (**"Property Information Sheet"**) concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b)    *Physical Inspection.* Buyer has 10 or _____ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c)    *Hazardous Substance Conditions Report.* Buyer has 30 or _____ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A **"Hazardous Substance"** for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A **"Hazardous Substance Condition"** for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d)    *Soil Inspection.* Buyer has 30 or _____ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days of the Date of Agreement.

(e)    *Governmental Approvals.* Buyer has 30 or _____ days following the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

(f)    *Conditions of Title.* Escrow Holder shall cause a current commitment for title insurance (**"Title Commitment"**) concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment (**"Underlying Documents"**), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g)    *Survey.* Buyer has 30 or _____ days following the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association (**"ALTA"**) standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h)    *Existing Leases and Tenancy Statements.* Seller shall within 10 or _____ days following the Date of Agreement provide both

*RR*
**INITIALS**

**PAGE 4 OF 11**

*CL*
**INITIALS**

© 2017 AIR CRE.  All Rights Reserved.
**OFA-20.00, Revised 01-03-2017**

FR Holdings IN

DocuSign Envelope ID: 0C8E3013-0928-439B-8CE4-5372D6DA06B

Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, **"Existing Leases"**) affecting the Property, and with a tenancy statement (**"Estoppel Certificate"**) in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has 10 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i)    *Owner's Association.* Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with a statement and transfer package from any owner's association servicing the Property. Such transfer package shall at a minimum include: copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from the receipt of such documents to satisfy itself with regard to the association.

(j)    *Other Agreements.* Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with legible copies of all other agreements (**"Other Agreements"**) known to Seller that will affect the Property after Closing. Buyer has 10 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

(k)    *Financing.* If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

(l)    *Existing Notes.* If paragraph 3.1(c) has not been stricken, Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, **"Loan Documents"**) to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement (**"Beneficiary Statement"**) confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or _____ days following the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof. Likewise if Seller is to carry back a Purchase Money Note then Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with a copy of the proposed Purchase Money Note and Purchase Money Deed of Trust. Buyer has 10 or _____ days from the receipt of such documents to satisfy itself with regard to the form and content thereof.

(m)    *Personal Property.* In the event that any personal property is included in the Purchase Price, Buyer has 10 or _____ days following the Date of Agreement to satisfy itself with regard to the title condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 or _____ days following the Date of Agreement.

(n)    *Destruction, Damage or Loss.* Subsequent to the Date of Agreement and prior to Closing there shall not have occurred a destruction, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price. If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

(o)    *Material Change.* Buyer shall have 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change. **"Material Change"** shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

(p)    *Seller Performance.* The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

(q)    *Brokerage Fee.* Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers (**"Brokerage Fee"**). It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.

9.2    All of the contingencies specified in subparagraphs (a) through (m) of paragraph 9.1 are for the benefit of, and may be waived by, Buyer, and may be elsewhere herein referred to as **"Buyer's Contingencies."**

9.3    If any of Buyer's Contingencies or any other matter subject to Buyer's approval is disapproved as provided for herein in a timely manner (**"Disapproved Item"**), Seller shall have the right within 10 days following the receipt of notice of Buyer's disapproval to elect to cure such Disapproved Item prior to the Expected Closing Date (**"Seller's Election"**). Seller's failure to give to Buyer within such period, written notice of Seller's commitment to cure such Disapproved Item on or before the Expected Closing Date shall be conclusively presumed to be Seller's Election not to cure such Disapproved Item. If Seller elects, either by written notice or failure to give written notice, not to cure a Disapproved Item, Buyer shall have the right, within 10 days after Seller's Election to either accept title to the Property subject to such Disapproved Item, or to terminate this Agreement. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this Agreement. Unless expressly provided otherwise herein, Seller's right to cure shall not apply to the remediation of Hazardous Substance Conditions or to the Financing Contingency. Unless the Parties mutually instruct otherwise, if the time periods for the satisfaction of contingencies or for Seller's and Buyer's elections would expire on a date after the Expected Closing Date, the Expected Closing Date shall be deemed extended for 3 business days following the expiration of: (a) the applicable contingency period(s), (b) the period within which the Seller may elect to cure the Disapproved Item, or (c) if Seller elects not to cure, the period within which Buyer may elect to proceed with this transaction, whichever is later.



INITIALS

**PAGE 5 OF 11**



INITIALS

© 2017 AIR CRE. All Rights Reserved.

**OFA-20.00, Revised 01-03-2017**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

FR Holdings IN

9.4    The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

**10.    Documents Required at or Before Closing:**

10.1    Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2    Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a)    Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

(b)    If applicable, the Beneficiary Statements concerning Existing Note(s).

(c)    If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d)    If applicable, Estoppel Certificates executed by Seller and/or the tenant(s) of the Property.

(e)    An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

(f)    If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

(g)    If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

(h)    If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3    Buyer shall deliver to Seller through Escrow:

(a)    The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date provided, however, that Buyer shall not be required to deposit such monies into Escrow if at the time set for the deposit of such monies Seller is in default or has indicated that it will not perform any of its obligations hereunder. Instead, in such circumstances in order to reserve its rights to proceed Buyer need only provide Escrow with evidence establishing that the required monies were available.

(b)    If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.

(c)    The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.

(d)    Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.

(e)    If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.

(f)    If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.

10.4    At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.

**IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.**

**11.    Prorations and Adjustments.**

11.1    *Taxes.*  Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2    *Insurance.*  **WARNING:** Any insurance which Seller may have maintained will terminate on the Closing. Buyer is advised to obtain appropriate insurance to cover the Property.

11.3    *Rentals, Interest and Expenses.*  Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4    *Security Deposit.*  Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

INITIALS

**PAGE 6 OF 11**

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

**OFA-20.00, Revised 01-03-2017**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

FR Holdings IN

DocuSign Envelope ID: 0C8E5013-092B-439B-8CE4-53729D6DA0BB

11.5  *Post Closing Matters.* Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

11.6  *Variations in Existing Note Balances.* In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof **("Existing Note Variation")**, then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.

11.7  *Variations in New Loan Balance.* In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.

11.8  *Owner's Association Fees.* Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

**12.      Representations and Warranties of Seller and Disclaimers.**

12.1  Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and any lawsuit or action based upon them must be commenced within such time period. Seller's warranties and representations are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a)  *Authority of Seller.* Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b)  *Maintenance During Escrow and Equipment Condition At Closing.* Except as otherwise provided in paragraph 9.1(n) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c)  *Hazardous Substances/Storage Tanks.* Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.

(d)  *Compliance.* Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e)  *Changes in Agreements.* Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f)  *Possessory Rights.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g)  *Mechanics' Liens.* There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

(h)  *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.

(i)  *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(o)) affecting the Property that becomes known to Seller prior to the Closing.

(j)  *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

(k)  *No Seller Bankruptcy Proceedings.* Seller is not the subject of a bankruptcy, insolvency or probate proceeding.

(l)  *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2  Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party hereto.

12.3  In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4  Any environmental reports, soil reports, surveys, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

**13.      Possession.**

Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

**14.      Buyer's Entry.**

At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the recompaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or

INITIALS

**PAGE 7 OF 11**

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

FR Holdings IN

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-5372905DA0BB

materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

**15.      Further Documents and Assurances.**
The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

**16.      Attorneys' Fees.**
If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees and costs. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term "**Prevailing Party**" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

**17.      Prior Agreements/Amendments.**
    17.1  This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.
    17.2  Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

**18.      Broker's Rights.**
    18.1  If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.
    18.2  Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

**19.      Notices.**
    19.1  Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger or by mail, postage prepaid, to the address set forth in this Agreement or by facsimile transmission, electronic signature, digital signature, or email.
    19.2  Service of any such communication shall be deemed made on the date of actual receipt if personally delivered, or transmitted by facsimile transmission, electronic signature, digital signature, or email. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.
    19.3  Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

**20.      Duration of Offer.**
    20.1  If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of _____**Bell Gardens, CA**_____ on the date of _____**June 1, 2018**_____ , it shall be deemed automatically revoked.
    20.2  The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

**21.      LIQUIDATED DAMAGES.    (This Liquidated Damages paragraph is applicable only if initialed by both Parties).**
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF $30,000.00_____ . UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

            _____RR_____                              _____OI_____
            **Buyer Initials**                          **Seller Initials**

**22.      ARBITRATION OF DISPUTES.**  (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)
    22.1  ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("**COMMERCIAL RULES**"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. THE NUMBER OF ARBITRATORS SHALL BE AS PROVIDED IN THE COMMERCIAL RULES AND EACH SUCH ARBITRATOR SHALL BE AN IMPARTIAL REAL ESTATE BROKER WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THE ARBITRATOR OR ARBITRATORS SHALL BE APPOINTED UNDER THE COMMERCIAL RULES AND SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION

-----DS
RR
_____
**INITIALS**

**PAGE 8 OF 11**

-----DS
OI
_____
**INITIALS**

© 2017 AIR CRE.  All Rights Reserved.

**OFA-20.00, Revised 01-03-2017**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

FR Holdings IN

DocuSign Envelope ID: 0C8E9013-092B-439B-8CE4-537290D6D0BB

HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 16 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.

22.2  BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3  NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.



Buyer Initials            Seller Initials

### 23.  Miscellaneous.

23.1  **Binding Effect.** This Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.

23.2  **Applicable Law.** This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located. Any litigation or arbitration between the Parties hereto concerning this Agreement shall be initiated in the county in which the Property is located.

23.3  **Time of Essence.** Time is of the essence of this Agreement.

23.4  **Counterparts.** This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5  **Waiver of Jury Trial. THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.**

23.6  **Conflict.** Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions. **Seller and Buyer must initial any and all handwritten provisions.**

23.7  **1031 Exchange.** Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange. The cooperating Party shall not have any liability (special or otherwise) for damages to the exchanging Party in the event that the sale is delayed and/or that the sale otherwise fails to qualify as a 1031 exchange.

23.8  **Days.** Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

### 24.  Disclosures Regarding The Nature of a Real Estate Agency Relationship.

24.1  The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.

24.2  When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:

(a)  *Seller's Agent.* A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) *To the Seller:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(b)  *Buyer's Agent.* A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) *To the Buyer:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(c)  *Agent Representing Both Seller and Buyer.* A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the

INITIALS                                                                                                    INITIALS

© 2017 AIR CRE.  All Rights Reserved.                                     OFA-20.00, Revised 01-03-2017

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com              FR Holdings IN

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-5372906DAD5B

Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

(d) *Further Disclosures.* Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document. Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties that may be of interest to this Buyer. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

24.3 *Confidential Information:* Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

**25.**    **Construction of Agreement.** In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

**26.**    **Additional Provisions:**

Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum or addenda consisting of paragraphs NONE through NONE    . (If there are no additional provisions write "NONE".)

Seller shall give Buyer 30 days to remove all personal property from the premises after close of Escrow. Possession of Property shall be delivered upon close of Escrow plus 30 days.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

---

**ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR CRE OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:**

**1.**    **SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.**

**2.**    **RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.**

**WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.**

---

**NOTE:**

**1.**    **THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.**

**2.**    **IF EITHER PARTY IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.**

INITIALS

© 2017 AIR CRE. All Rights Reserved.

INITIALS

OFA-20.00, Revised 01-03-2017

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

FR Holdings IN

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-5C729D6D20BB

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

Date: 5/29/2018

**BROKER**
Realty ONE Group

**BUYER**
F.R. Holdings, LLC.

Att: Jeremie Tavisola

By: *Reynaldo Rivera*

Title: Broker Associate

Name Printed: Reynaldo Rivera

Address: 1260 Corona Pointe Ct., Suite 102

Title: Managing Member

Corona, CA 92879

Phone: (562) 360-1071

Phone: (949) 689-4829

Fax:

Fax: (858) 836-5716

Email: ReyR@EagleContractingInc.net

Email: JTavisola@Tavisola.com

Federal ID No.: 80-0346151

By:

Broker/Agent BRE License #: 01878341/01462137

Name Printed:

Title:

Phone:

Fax:

Email:

Address: 6720 Hoover Ave

Whittier, CA 90061

Federal ID No.:

## 27. Acceptance.

27.1  Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.

27.2  In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to __6.000__ % of the Purchase Price to be divided between the Brokers as follows: Seller's Broker __4.000__ % and Buyer's Broker __2.000__ %. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.

27.3  Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

**NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.**

Date: 5/29/2018

**BROKER**
Realty ONE Group

**SELLER**
SUPERIOR BOILER REPAIRS, INC.

Att: Jeremie Tavisola

By:

Title: Broker Associate

Name Printed: OMAR GAMARRA

Address: 1260 Corona Pointe Court,

Title: President and CEO

Corona, CA 92879

Phone: (562) 472-5976

Phone: (949) 689-4829

Fax:

Fax: (858) 836-5716

Email:

Email: JTavisola@symtex.net

Federal ID No.:

By:

Broker/Agent BRE License #:

Name Printed:

Title:

Phone:

Fax:

Email:

Address: 8204 GARFIELD AVE.,

BELL GARDENS, CA 90201

Federal ID No.:

**AIR CRE. 500 North Brand Blvd, Suite 900, Glendale, CA 91203, Tel 213-687-8777, Email contracts@aircre.com**
**NOTICE:  No part of the works may be reproduced in any form without permission in writing.**

INITIALS

**PAGE 11 OF 11**

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

OFA-20.00, Revised 01-03-2017

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

FR Holdings IN



## · EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lots 10 and 11, in Block 1, of Tract No. 10878, in the City of Bell Gardens, County of Los Angeles, State of California, as per map recorded in Book 192, Pages 3, 4 and 5 of Maps, in the Office of the County Recorder of said County.

Except 50 per cent of all oil, gas, asphaltum and other hydrocarbon substances underlying said land or thereafter may be produced thereon or therefrom, as reserved by Security-First National Bank of Los Angeles as Trustee under its Declaration of Trust No. D-6988, recorded in Book 20355, Page 342 of Official Records.

Also Excepting 25 per cent of all oil, gas and other hydrocarbon substances in, under or on said land that may be produced from a depth below 100 feet from the surface of said property, but without the right of surface entry, in Deed recorded May 14, 1958 as Instrument No. 235, of Official Records.

DocuSign Envelope ID: 0C9E3013-092B-439B-8CE4-53729D8DA0AB



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

### REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE
### (FOR BUYER REPRESENTATIVES)
(C.A.R. Form RCSD-B, Revised 6/16)

**This form is not an assignment. It should not be used to add new parties after a contract has been formed. The purpose of this form is to identify who the principal is in the transaction and who has authority to sign documents on behalf of the principal**

This is a disclosure to the **X** Purchase Agreement, ☐ Buyer Representation Agreement, ☐ Other
_____, dated *05/29/2018* ("Agreement"),
for the property known as _____ *8204 Garfield Ave, Bell Gardens, CA* _____ ("Property"),
between _____ *Superior Boiler Repairs, Inc.* _____ ("Seller", ☐ "Buyer Broker").
and _____ *F.R. Holdings, LLC.* _____ ("Buyer")
If a trust, identify Buyer as the trustee(s) of the trust or by simplified trust name (e.g. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust 3.) Full name of trust should be identified in 1A below. If power of attorney, insert principal's name as Buyer.

1. __ **A.** **TRUST:** (1) Assets used to acquire/lease the Property are held in trust pursuant to a trust document titled _____
   _____ dated _____ .
   (2) The person(s) signing below is/are Sole/Co/Successor Trustee(s) of the Trust.

   **X B.** **ENTITY:** Buyer is a ☐ Corporation, **X** Limited Liability Company, ☐ Partnership ☐ Other:
   which has authorized the officer(s), managing member(s), partner(s) or person(s) signing below to act on its behalf. An authorizing resolution of the applicable body of the entity described above ☐ is **X** is not attached.

   ☐ **C.** **POWER OF ATTORNEY:** Buyer ("Principal") has authorized the person(s) signing below ("Attorney-In-Fact", "Power of Attorney" or "POA") to act on his/her behalf pursuant to a General Power of Attorney ( ☐ Specific Power of Attorney for the Property), dated _____ . **This form is not a Power of Attorney. A Power of Attorney must have already been executed before this form is used.**

2. Buyer's Representative represents that the trust, entity or power of attorney for which that Party is acting already exists.

**Buyer:**

By _____*Reynaldo Rivera*_____    Date: 5/29/2018
(Sign Name of Trustee, Officer, Managing Member, Partner, or Attorney-in-Fact)
(Print Representative Name) *Reynaldo Rivera*    Title: *Managing Member*

By _____    Date: _____
(Sign Name of Trustee, Officer, Managing Member, Partner, or Attorney-in-Fact)
(Print Representative Name) _____    Title: _____

**Acknowledgement of Receipt By Other Party:**

(Buyer Broker) *Realty ONE Group*
By _____*Jeremie Tavisola*_____    Date: *05/29/2018*
(Seller) _____    Date: 5/29/2018
(Print Seller Name) *Superior Boiler Repairs, Inc. by Omar Gamarra, its President & CEO*

(Seller) _____    Date: _____
(Print Seller Name) _____

© 2015-2016 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____

**RCSD-B REVISED 6/16 (PAGE 1 OF 1)**
### REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (RCSD-B PAGE 1 OF 1)

Realty ONE Group 1260 Corona Point Court, Suite 102 Corona, CA 92879    Phone: 949-689-4829    Fax: 858-836-5716    FR Holdings IN
JEREMIE TAVISOLA    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-53739D6DA0BB



**AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT**

To:      F.R. Holdings, LLC.                           Property:  8204 Garfield Ave, Bell Gardens 90201
From:   Realty ONE Group, Inc.                     Date:       05/29/2018

This is to give you notice that Realty ONE Group, Inc. has a business relationship with Everest Escrow, Inc., ONE Home Warranty, Inc., ONE Disclosure, Inc., and ONE Asset Exchange, Inc. The owner of Realty ONE Group, Inc. owns 100% of Everest Escrow, Inc., ONE Home Warranty, Inc.[1], ONE Disclosure, Inc.[2], and ONE Asset Exchange, Inc.[3] Because of these relationships, a referral may provide Realty ONE Group, Inc. a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider(s) as a condition for your purchase, sale, or refinance of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| PROVIDER | DESCRIPTION OF SETTLEMENT SERVICE | SETTLEMENT SERVICE CHARGE OR RANGE OF CHARGES |
|---|---|---|
| Everest Escrow, Inc. | Escrow services | The Purchase/Sale escrow fee is calculated based upon a base fee of $500.00 plus $2.00 per thousand of the purchase price. Said fee is charged per transaction side. |
| ONE Home Warranty, Inc. | Home warranty services | For Buyer, home warranty packages range from $190 to $850+ a year depending upon the type of residence, comprehensiveness of package, and additional options.  For Seller, coverage ranges from $.55/day to $.81/day depending upon the type of residence and if the residence has A/C. |
| ONE Disclosure, Inc. | Real estate disclosure reports (Natural Hazard, Tax, and Environmental Disclosures) | *Standard Report:* $84.95<br>*Premium Report:* $94.95 |

---

[1] ONE Home Warranty Protection plans are issued by American Home Shield ®.  Realty ONE Group makes no warranties or representations regarding the products or services issued by American Home Shield ®.
[2] ONE Disclosure Natural Hazard Disclosure reports, California Tax reports, Environmental Reports, and Supplemental Hazard Disclosures are issued by Public Data Solutions LLC.  Realty ONE Group makes no warranties or representations regarding the products or services issued by Public Data Solutions LLC.
[3] All 1031 exchange accommodation services are provided by Asset Exchange Company.  Realty ONE Group makes no warranties or representations regarding the services provided by Asset Exchange Company.

CA Updated 9/2017

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-53729D8DA0BB



| | | |
|---|---|---|
| ONE Asset Exchange, Inc. | 1031 Exchange services | *Delayed Exchange*: $750 for the sale property; $200 for the purchase of replacement property. *Reverse Exchange*: Approximately $5,000 to $10,000 depending on number and type of properties. *Construction Exchange*: Approximately $5,000 to $10,000 depending on number and type of properties |

### ACKNOWLEDGMENT

I/we have read this disclosure form, and understand that Realty ONE Group, Inc. is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

Realty ONE Group Client(s):

_Reynaldo Rivera_                5/29/2018
DocuSigned by:
0A6FCE4DE674DC...

Signature                        Date                    Signature                        Date

**Reynaldo Rivera**
_____              _____
Printed Name                                      Printed Name

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-5272906DA0BB



## CO-PROMOTION/MARKETING ARRANGEMENT DISCLOSURE STATEMENT

To:     F.R. Holdings, LLC.       Property:    8204 Garfield Ave, Bell Gardens 90201

From:    Realty ONE Group, Inc.      Date:     05/25/2018

This is to give you notice that Realty ONE Group, Inc. has a business relationship with the following service providers, who may compensate Realty ONE Group, Inc. for various marketing and promotional services. Because of the business relationship, a referral to these vendors may provide Realty ONE Group, Inc. a financial or other benefit. The owner of Realty ONE Group, Inc. has no ownership interest in any of the vendors listed below. These vendors may offer to provide any Realty ONE Group customer with certain services or benefits related to a home purchase/sale. This disclosure is provided to you in order to abide with any potential Unfair Deceptive Abusive Acts or Practices (UDAAP) notification requirement.

- Sunrun, Inc.
- The Elite Group
- The Termite Guy

**You are NOT required to use such service providers in connection with your real estate transaction. THERE ARE FREQUENTLY OTHER COMPANIES AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND WITH OTHER COMPANIES TO DETERMINE WHETHER YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES IN THE EVENT YOU SEEK THESE TYPES OF SERVICES.**

Realty ONE Group makes no warranties or representations regarding the services provided by any service provider that you use in your real estate transaction, including the above providers.

## ACKNOWLEDGMENT

I/we have read this disclosure form, and understand that Realty ONE Group, Inc. and/or its agents is referring me/us to the above-described business (s) and may receive a financial or other benefit as the result of this referral.

Realty ONE Group Client(s):

DocuSigned by:

*Reynaldo Rivera*      5/29/2018

Signature           Date           Signature         Date

Reynaldo Rivera

Printed Name                 Printed Name

CA Updated 9/2017

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-5370BD6DA8B5



**CALIFORNIA ASSOCIATION OF REALTORS®**

**REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE**
**(FOR SELLER REPRESENTATIVES)**
(C.A.R. Form RCSD-S, Revised 6/16)

**This form is not an assignment. It should not be used to add new parties after a contract has been formed. The purpose of this form is to identify who the principal is in the transaction and who has authority to sign documents on behalf of the principal.**

This is a disclosure to the [X] Purchase Agreement, __ Listing Agreement, [_] Other _____
_____ dated _**05/29/2018**___ , ("Agreement"),
for the property known as _____**8204 Garfield Ave, Bell Gardens, CA**_____ ("Property"),
between _____**F.R. Holdings, LLC.**_____ ("Buyer", __ Listing Broker)
and _____**Superior Boiler Repairs, Inc.**_____ ("Seller").
If a trust, identify Seller as the trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust 3.). Full name of trust should be identified in 1A below. If power of attorney, insert principal's name as Seller.

1. **A.  TRUST:** (1) The Property is held in trust pursuant to a trust document, titled (Full name of Trust)
_____ dated _____ .
(2) The person(s) signing below is/are Sole/Co/Successor Trustee(s) of the Trust.

[X] **B.  ENTITY:** Seller is a [X] Corporation, __ Limited Liability Company, __ Partnership __ Other: _____
which has authorized the officer(s), managing member(s), partner(s) or person(s) signing below to act on its behalf. An authorizing resolution of the applicable body of the entity described above [_] is [X] is not attached.

[_] **C.  POWER OF ATTORNEY:** Seller ("Principal") has authorized the person signing below ("Attorney-In-Fact", "Power of Attorney" or "POA") to act on his/her behalf pursuant to a General Power of Attorney ( [_] Specific Power of Attorney for the Property), dated _____ . **This form is not a Power of Attorney. A Power of Attorney must have already been executed before this form is used.**

[_] **D.  ESTATE:** (1) Seller is an __ estate, __ conservatorship, or __ guardianship identified by Superior Court Case name as _____ , Case # _____
(2) The person(s) signing below is/are court approved representatives (whether designated as Sole or Co-Executor, Administrator, Conservator, Guardian) of the estate, conservatorship or guardianship identified above.

2. Seller's Representative represents that the trust, entity or power of attorney for which that Party is acting already exists.

**Seller:**
By _____ Date: 5/29/2018
(Sign Name of Trustee, Officer, Managing Member, Partner, Attorney-in-Fact or Administrator/Executor)
(Print Representative Name) **Omar Gamarra**                          Title: **President & CEO**
By _____ Date: _____
(Sign Name of Trustee, Officer, Managing Member, Partner, Attorney-in-Fact or Administrator/Executor)
(Print Representative Name) _____              Title: _____

**Acknowledgement of Receipt By Other Party:**

(Listing Broker) **Realty ONE Group**
By _____ Date: 5/29/2018
**Jeremie Tavisola**
(Buyer) _____ Date: 5/29/2018
(Print Buyer Name) **F.R. Holdings, LLC by Reynaldo Rivera, its Managing Member**
(Buyer) _____ Date: _____
(Print Buyer Name) _____

© 2015-2016 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020           Reviewed by _____

**RCSD-S REVISED 6/16 (PAGE 1 OF 1)**
**REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (RCSD-S PAGE 1 OF 1)**

Realty ONE Group 1260 Corona Point Court, Suite 102 Corona, CA 92879          Phone: 949-689-4829          Fax: 858-836-5716          FR Holdings IN
JEREMIE TAVISOLA          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-53729D6DA9BB
5/29/2018

Wells Fargo

## BUSINESS CHECKING
...9247

**$618,893.21**
Available balance

### Activity Summary

| | |
|---|---|
| Ending collected balance  as of  05/25/18 | $645,500.04 |
| Current posted balance | $645,500.04 |
| Pending withdrawals/debits | -$26,706.83 |
| Pending deposits/credits | +$100.00 |
| **Available balance** | **$618,893.21** |

Monthly Service Fee Summary

## Activity

First
Previous
Next

| Date | Description | Deposits/Credits | Withdrawals/Debits |
|---|---|---|---|
| **Received for Processing** | | | |
| 05/29/18 | CHECK # 14915 | | $2,151.92 |
| 05/29/18 | CHECK # 14946 | | $1,563.03 |
| 05/29/18 | CHECK # 14938 | | $1,522.68 |
| **Authorized Transactions** | | | |
| *Note: Debit card transaction amounts may change.* | | | |
| 05/29/18 | TELLER CASHED CHECK # 5149 | | $2,400.00 |
| 05/29/18 | Transaction correction - Check/deposit posted f | | $3,712.50 |
| 05/29/18 | DEPOSITED OR CASHED CHECK # 14944 | | $2,399.60 |
| 05/29/18 | DEPOSITED OR CASHED CHECK # 14953 | | $981.00 |
| 05/29/18 | RECURRING TRANSFER FROM EAGLE CONTRACTING, INC. | $100.00 | |
| 05/29/18 | DEPOSITED OR CASHED CHECK # 14939 | | $970.21 |
| 05/29/18 | DEPOSITED OR CASHED CHECK # 14949 | | $1,839.00 |
| 05/29/18 | DEPOSITED OR CASHED CHECK # 14920 | | $1,612.75 |
| 05/29/18 | DEPOSITED OR CASHED CHECK # 14945 | | $1,821.76 |
| 05/29/18 | TELLER CASHED CHECK # 14951 | | $1,116.66 |
| 05/29/18 | TELLER CASHED CHECK # 14913 | | $893.33 |
| **Totals** | | **$756,152.03** | **$712,295.36** |

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-53739D6DA0BB



Wells Fargo SBA
Nicholas Lorenz
SBA Loan Officer

February 26, 2018

Dear EAGLE CONTRACTING INC

Wells Fargo Bank, National Association (also referred to as "Wells Fargo SBA Lending" and the "Bank") is pleased to present the following proposal based on the financial information that has been provided.  This proposal is for discussion purposes only and should not be construed as a lending commitment on the part of Wells Fargo SBA Lending.  A commitment can only be made after completion of our underwriting process, management approval, and completion of documentation acceptable to counsel.

We are pleased with the opportunity to assist you with an **SBA loan** to purchase Commercial Real Estate

**Est Purchase Price:  $3,000,000**
**Est. Min Loan Amount:  $2,700,000**
**Est. Down Payment (Min 10%): $300,000**

Subject To:
- Completion of Wells Fargo Bank loan documentation requirements
- Acceptance by you of Wells Fargo's offer to issue a real estate loan which will be outlined in a commitment letter
- SBA approval
- Satisfactory property appraisal
- Phase I/Phase 2 (if needed) Environmental Assessment Report
- Acceptable title insurance
- No material adverse change in your financial condition
- Owner occupancy of 51% or greater
- Loan-to-appraised value not to exceed 90%
- Loan to appraised value of the business valuation not to exceed 70%
- Full personal guaranty of all 20% or more owners of the Subject Property and all 20% or more owners of the Operating Company; and Corporate Guaranty of the Operating Company.

If you have any questions about your loan request, please contact me.

We look forward to assisting you with the financing of your building.

Sincerely,

*Nicholas Lorenz*
SBA Business Development Officer

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-5372D05DA0BB



CALIFORNIA
ASSOCIATION
OF REALTORS®

**REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE
(FOR SELLER REPRESENTATIVES)**
(C.A.R. Form RCSD-S, Revised 6/16)

**This form is not an assignment. It should not be used to add new parties after a contract has been formed. The purpose of this form is to identify who the principal is in the transaction and who has authority to sign documents on behalf of the principal.**

This is a disclosure to the [  ]Purchase Agreement, **X** Listing Agreement, [  ]Other _____

_____ dated _____ , ("Agreement"),

for the property known as _____ **8204 Garfield Ave, Bell Gardens, CA** _____ ("Property"),

between _____ **Realty ONE Group** _____ ("Buyer", **X** Listing Broker)

and _____ **Superior Boiler Repairs, Inc.** _____ ("Seller").

If a trust, identify Seller as the trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust 3.). Full name of trust should be identified in 1A below. If power of attorney, insert principal's name as Seller.

1. **A.   TRUST:** (1) The Property is held in trust pursuant to a trust document, titled (Full name of Trust)

   _____ dated _____ .

   (2) The person(s) signing below is/are Sole/Co/Successor Trustee(s) of the Trust.

   [X] **B.   ENTITY:** Seller is a [X] Corporation, [ ] Limited Liability Company, [ ] Partnership [ ] Other: _____
   which has authorized the officer(s), managing member(s), partner(s) or person(s) signing below to act on its behalf. An authorizing resolution of the applicable body of the entity described above [ ] is [ ] is not attached.

   [ ] **C.   POWER OF ATTORNEY:** Seller ("Principal") has authorized the person(s) signing below ("Attorney-In-Fact", "Power of Attorney" or "POA") to act on his/her behalf pursuant to a General Power of Attorney ( [ ] Specific Power of Attorney for the Property), dated _____ . **This form is not a Power of Attorney. A Power of Attorney must have already been executed before this form is used.**

   [ ] **D.   ESTATE:** (1) Seller is an [ ] estate, [ ] conservatorship, or [ ] guardianship identified by Superior Court Case name as _____ , Case # _____
   (2) The person(s) signing below is/are court approved representatives (whether designated as Sole or Co-Executor, Administrator, Conservator, Guardian) of the estate, conservatorship or guardianship identified above.

2. Seller's Representative represents that the trust, entity or power of attorney for which that Party is acting already exists.

**Seller:**

By _____ _Omar G_____ Date: **_03/14/2018_**

(Sign Name of Trustee, Officer, Managing Member, Partner, Attorney-in-Fact or Administrator/Executor)

(Print Representative Name) **Omar Gamarra** _____ Title: _____

By _____ Date: _____

(Sign Name of Trustee, Officer, Managing Member, Partner, Attorney-in-Fact or Administrator/Executor)

(Print Representative Name) _____ Title: _____

**Acknowledgement of Receipt By Other Party:**

(Listing Broker) _Realty ONE Group_

By _____ _Jeremie Tavisola_____ Date: **_03/14/2018_**
_Jeremie Tavisola_

(Buyer) _____ _Reynaldo Rivera_____ Date: _5/29/2018_

(Print Buyer Name) **F.R. Holdings, LLC by Reynaldo Rivera, its Managing Member**

(Buyer) _____ Date: _____

(Print Buyer Name)

© 2015-2016 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020    Reviewed by _____

**RCSD-S REVISED 6/16 (PAGE 1 OF 1)**

**REPRESENTATIVE CAPACITY SIGNATURE DISCLOSURE (RCSD-S PAGE 1 OF 1)**

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-5372ED6DA08B



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT ("Seller" includes both a vendor and a lessor)**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller. To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT ("Buyer" includes both a purchaser and a lessee).**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care , integrity, honesty and loyalty in dealings with the Buyer. To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional. Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Lessor ☐ Lessee   *Reynaldo Rivera*          Date: 5/29/2018
                                   F.R. Holdings, LLC.
                                    ―38BE1CE9D6674DC...

☐ Buyer ☐ Seller ☐ Lessor ☐ Lessee   _____ Date: _____

Agent             **Realty ONE Group**                 BRE Lic. # <u>01878341</u>
                Real Estate Broker (Firm)

By: _____ BRE Lic. # <u>01462137</u>     Date: <u>05/29/2018</u>
     (Salesperson or Broker-Associate) **Jeremie Tavisola**
            ―F676F382990C47A...

NOTE:
• When the listing brokerage company also represents Buyer/Lessee: The Listing Agent shall have one Agency Disclosure form signed by Seller/Lessor and a second Agency Disclosure form signed by Buyer/Lessee
• When Seller/Lessor and Buyer/Lessee are represented by different brokerage companies: (i) the Listing Agent shall have one Agency Disclosure form signed by Seller/Lessor and (ii) the Buyer's/Lessee's Agent shall have one Agency Disclosure form signed by Buyer/Lessee and either that same or a different Agency Disclosure form presented to Seller/Lessor for signature prior to presentation of the offer. If the same form is used, Seller/Lessor may sign here:

Seller/Lessor **OMAR GAMARRA**           Date: 5/29/2018
                 ―8C58159ED4F4C9...

THIS FORM HAS BEEN PREPARED BY AIR CRE. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF THIS FORM FOR ANY SPECIFIC TRANSACTION. PLEASE SEEK LEGAL COUNSEL AS TO THE APPROPRIATENESS OF THIS FORM.

**PAGE 1 OF 3**

INITIALS                                                   INITIALS

© 2017 AIR CRE. All Rights Reserved.                                           AD-2.00, Revised 01-03-2017

Realty ONE Group 1260 Corona Point Court, Suite 102 Corona, CA 92879
Phone: 949-689-4829        Fax: 858-836-5716        JEREMIE TAVISOLA                 FR Holdings IN
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-5372906DA8B6

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP**

**CIVIL CODE SECTIONS 2079.13 THROUGH 2079.24 (2079.16 APPEARS ON THE FRONT)**

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. **(e)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(f)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(g)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(h)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(i)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(j)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(k)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(l)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(o)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(p)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

---

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this form.

**2079.17** **(a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form.

<table>
<tr><td>**(DO NOT COMPLETE. SAMPLE ONLY)**</td><td>is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.</td></tr>
<tr><td>(Name of Listing Agent)</td><td></td></tr>
<tr><td>**(DO NOT COMPLETE. SAMPLE ONLY)**</td><td>is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or</td></tr>
<tr><td>(Name of Selling Agent if not the same as the Listing Agent)</td><td>☐ both the buyer and seller.</td></tr>
</table>

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

DS
*RR*
**INITIALS**

**PAGE 2 OF 3**

DS
*[initials]*
**INITIALS**

© 2017 AIR CRE.  All Rights Reserved.

**AD-2.00, Revised 01-03-2017**

FR Holdings IN

DocuSign Envelope ID: 0C8E3013-092B-439B-8CE4-53779D6DA0BB

**2079.18**    No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19**    The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20**    Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21**    A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22**    Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23**    **(a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

   **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.

**2079.24**    Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

**AIR CRE. 500 North Brand Blvd, Suite 900, Glendale, CA 91203, Tel 213-687-8777, Email contracts@aircre.com**
**NOTICE:  No part of the works may be reproduced in any form without permission in writing.**

INITIALS
© 2017 AIR CRE.  All Rights Reserved.
INITIALS
**AD-2.00, Revised 01-03-2017**

FR Holdings IN

# EXHIBIT "3"



**EVEREST**
**E S C R O W**

2701 Loker Avenue West, Suite 148, Carlsbad, CA  92010
Tel: (760) 607-3240 • Fax: (760) 683-6537
Contact: jennifer.stipe@everestescrow.com
www.EverestEscrow.com

## SUPPLEMENTAL INSTRUCTIONS & GENERAL PROVISIONS

TO:  **Everest Escrow, Inc.**

Date:  **May 30, 2018**
Escrow Officer:  **Jennifer Stipe**
Escrow Number:  **CA6084-JS**

**Property Address: 8204 Garfield Avenue, Bell Gardens, CA  90201**
**Seller: Superior Boiler Repairs, Inc.**
**Buyer: FR Nest Holdings LLC**
**Title Company: First American Title**
**Order #: NCS-908975-ONT1**
**Acceptance Date: May 29, 2018**
**Close of Escrow: July 30, 2018**
**Purchase Price: $1,365,000.00**

**EVEREST ESCROW, INC. IS LICENSED AS AN ESCROW AGENT BY THE DEPARTMENT OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, LICENSE # 963-2626**

**THE OWNER OF REALTY ONE GROUP, INC. IS ALSO THE OWNER OF EVEREST ESCROW, INC. AND REALTY ONE GROUP, INC. IS OR MAY BE ACTING AS A REAL ESTATE BROKER IN THIS ESCROW TRANSACTION.**

**JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER: EVEREST ESCROW, INC.** hereinafter referred to as Escrow Holder has been provided with a copy of the fully executed **AIR CRE STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS FOR PURCHASE OF REAL ESTATE (Non-Residential)** ("Purchase Agreement") dated **MAY 29, 2018** and also: **AMENDMENT OF EXISTING AGREEMENT TERMS NO. ONE.**

Buyer and Seller acknowledge, agree and understand that Escrow Holder's responsibility and duties are limited to the specific paragraphs 8.1 − 8.6 listed in **Item # 8.  Escrow and Closing** of the Purchase Agreement which shall serve as escrow instructions to Escrow Holder in conjunction with these Supplemental Instructions and General Provisions. Except for those paragraphs specifically identified as "Escrow Instructions", no other sections, paragraphs or language in the Purchase Agreement shall concern or bind Escrow Holder, or deemed to be escrow instructions. To the extent the General Provisions are inconsistent or conflict with the Purchase Agreement, the General Provisions will control as to the duties and obligations of Escrow Holder only.

**NAME CORRECTIONS:** In the event the Buyer's and/or Seller's names are set out differently in these instructions than they are set out in the Purchase Agreement and Joint Escrow Instructions, all parties agree that these instructions shall be deemed to correct the names and that the names shall hereafter read as set out in these instructions.

**BUYER'S VESTING:** The Buyer's vesting to subject property will be determined prior to the close of escrow. Escrow Holder is authorized and instructed to insert the Buyer's vesting and/or name variation on the grant deed, above the Seller's signature, as per Buyer's unilateral instructions.

BUYERS INITIALS _____          SELLERS INITIALS _____

*Page 1*

Everest Escrow, Inc.

Date: **May 30, 2018**
Escrow No.: **CA6084-JS**

**LEGAL DESCRIPTION:** The legal description for subject property will be provided by the Title Company as contained in the Preliminary Report. Buyer's approval of the Report and Seller's signature on the Grant Deed shall be deemed each Parties approval of the legal description for subject property and the use of same in this escrow transaction. Escrow Holder is instructed to attach the legal description provided by the Title Company to recordable documents, including but not limited to, deed(s), deed(s) of trust and affidavit(s).

**COURT ORDER:** Close of escrow is contingent upon the Bankruptcy Court issuing a specific Order approving the sale and authorizing the Seller to take actions to consummate the sale of subject property. Escrow Holder's receipt of a certified copy of the Order and the approval of same by First American Title shall be deemed a removal of this contingency. Escrow Holder is to charge the Seller the cost for recording said Order at the close of escrow.

**PROCESSING FEE:** Buyer and Seller herein acknowledge, understand and agree that they will each be charged a Processing Fee of $100.00 at the close of escrow. This fee covers all wire transfer fees, overnight messenger fees, postage and the archiving fee incurred in connection with the processing of this escrow transaction.

**DEPOSIT OF CLOSING FUNDS:** All parties are aware and understand that it is the policy of **EVEREST ESCROW, INC.** that all closing funds are to be deposited into the escrow trust account by electronic funds transfer ("wire").

* * * * * * * * * * * *

**BY SETTING FORTH HIS/HER FULL AND COMPLETE SIGNATURE AND BY INITIALING THE ATTACHED "GENERAL PROVISIONS", EACH PARTY TO THIS ESCROW ACKNOWLEDGES RECEIPT OF SAME AND AGREES THAT SUCH EXECUTION SHALL BE DEEMED HIS/HER FULL ACCEPTANCE AND APPROVAL OF, CONCURRENCE IN, AND AGREEMENT TO BE BOUND BY, ALL OF THE TERMS, PROVISIONS, CONDITIONS, CONTINGENCIES, INSTRUCTIONS AND AGREEMENTS CONTAINED HEREIN, IN THEIR ENTIRETY.**

**SELLER(S):**

Superior Boiler Repairs, Inc.

_____

By: Omar Gamarra, President

**BUYER(S):**

FR Nest Holdings LLC

_____

By: Reynaldo Rivera, Member

Everest Escrow, Inc.

Date: May 30, 2018
Escrow No.: CA6084-JS

## EVEREST ESCROW, INC • GENERAL PROVISIONS

**1.     AGREEMENT TO BE BOUND BY GENERAL PROVISIONS:** The Parties agree to execute these instructions and any supplemental instructions presented by Escrow Holder (also known as Settlement Agent) confirming their agreement to be bound to any and all additional terms and conditions of Escrow Holder as contained in these general provisions, and authorize Escrow Holder to resign from processing this escrow transaction if mutual agreement cannot be reached between the Parties and Escrow Holder relative to the terms of conditions of Escrow Holder's duty. THE SUPPLEMENTAL ESCROW INSTRUCTIONS AND THESE GENERAL PROVISIONS ARE NOT INTENDED TO SUPERSEDE THE · REAL ESTATE PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS, OR ANY OUTSIDE AGREEMENT BETWEEN THE PARTIES, BUT INSTEAD ARE FOR THE SOLE PURPOSE OF ENABLING ESCROW HOLDER TO CARRY OUT THE TERMS AND CONDITIONS IN CONSUMMATING THIS PURCHASE AND SALE, EXCEPT AS MAY BE AMENDED OR MODIFIED BY THE MUTUAL WRITTEN INSTRUCTIONS OF THE PARTIES.

**2.     COMMENCEMENT OF ESCROW HOLDER DUTY:** The Parties acknowledge, agree and understand that Escrow Holder's duty commences, upon Escrow Holder's receipt and acknowledgement of a fully executed Purchase Agreement and Joint Escrow Instructions by all Parties and the deposit in escrow of the Buyer's initial good faith deposit. In the event a Purchase Agreement and Joint Escrow Instructions does not exist and has not been entered into by the Parties, then Escrow Holder's duty commences upon Escrow Holder's receipt of fully executed escrow instructions as drafted by Escrow Holder at the direction of the Parties.

**3.     DUTIES OF ESCROW HOLDER:** The Parties agree that Escrow Holder has only those responsibilities inherent of an escrow service provider and that there are no other legal relationships established between Escrow Holder and the Parties by way of this escrow transaction. Those duties are limited to the safekeeping of such money and documents received by Escrow Holder and for the disposition and/or disbursement of same in accordance with the written instructions accepted by Escrow Holder in this Escrow. Escrow Holder shall not be liable for any damages, losses, costs, or expenses incurred by any Party in the handling and processing of this escrow transaction as a result of any act or failure to act made or omitted in good faith or for any action taken that Escrow Holder shall in good faith believe to be genuine, excepting such as may arise through or be caused by Escrow Holder's willful neglect or gross misconduct.

**4.     PROMISE TO PAY AND INDEMNIFY:** The Parties hereby jointly and severally promise and agree to pay promptly on demand, as well as to indemnify Escrow Holder and hold Escrow Holder harmless from and against all litigation and interpleader costs, damages, judgments, attorneys' fees, expenses, obligations, and liability of every kind which in good faith Escrow Holder may incur or suffer in connection with or arising out of this escrow transaction, whether said litigation, interpleader, obligation, liability or expense arises during the performance of this escrow transaction or subsequent thereto, directly or indirectly. The Parties agree to pay Escrow Holder a reasonable fee for all time spent by officers or employees of Escrow Holder in connection with any dispute resolution action taken relative to this escrow transaction including but not limited to time spent researching, reviewing and/or testifying relative thereto.

**5.     UNJUST ENRICHMENT:** In the event any Party to this escrow transaction received funds or is credited funds to which they are not entitled, said Party agrees, upon written demand, to return said funds immediately to escrow for correct disbursement.

**6.     DEPOSIT OF FUNDS:** Escrow Holder is instructed to deposit all funds received by Escrow Holder with any state or national bank in a trust account in the name of Escrow Holder, without any liability for payment of interest. All deposits made by personal check, cashier's check, certified check, or deposit other than cash or wire transfer are subject to clearance and payment by the financial institution upon which they are drawn. Funds deposited with Escrow Holder in the form of check or similar instrument will be identified as collected funds when the Escrow Holder's financial institution confirms that the funds are available for disbursement. **BE ADVISED THAT CYBER CRIMINALS ARE USING PHISHING TECHNIQUES (AKA USING THE INTERNET TO ACQUIRE SENSITIVE INFORMATION SUCH AS USERNAMES, PASSWORDS, AND CREDIT CARD DETAILS AND SOMETIMES, INDIRECTLY, MONEY, OFTEN FOR MALICIOUS REASONS, BY MASQUERADING AS A TRUSTWORTHY ENTITY IN AN ELECTRONIC COMMUNICATION) TO TRY AND DIVERT WIRES COMING INTO AND GOING OUT OF ESCROW COMPANIES. TO AVOID SUCH SCAMS, PRIOR TO SENDING ANY WIRE TO ESCROW HOLDER, THE WIRING PARTY MUST CONTACT ESCROW HOLDER TO CONFIRM THE APPROPRIATE WIRING INSTRUCTIONS.**

**7.     GOOD FUNDS LAW:** Pursuant to California Insurance Code Section 12413.1, known as the Good Funds Law, the Parties hereto are made aware that closing funds deposited by the Parties and/or lender must be cleared funds prior to close of escrow. This law places some very specific constraints upon the time frames for funds to be made available for disbursement. Close of escrow cannot occur before funds are cleared and immediately collectible and available for withdrawal, which clearance can range from being immediately available upon receipt to seven (7) days depending on the form deposit. The Parties hereby release Escrow Holder of any responsibility, claim, and/or liability in connection with such a delay caused by the manner in which closing funds or lender's funds are deposited.

**8.     RELEASE OF FUNDS:** In the event the Parties to this escrow transaction instruct Escrow Holder to release funds prior to close of escrow, regardless of the fact that this escrow transaction has not closed and/or documents are not yet recorded, the Parties hereby release, relieve, indemnify and agree to hold harmless Escrow Holder from any and all liability and/or responsibility, both legally and equitably, which may arise, including but not limited to any legal actions, attorney's fees, costs or claims of any kind, either now, during the course of this escrow transaction, or subsequent to the close of this escrow transaction by reason of Escrow Holder complying with said release of funds, and Escrow Holder shall not be responsible to assist in the recovery of same in the event that this escrow transaction is not consummated.

**9.     THIRD PARTY BILLINGS:** In the event there are repairs and/or work to be made to the subject property as agreed to by all Parties hereto, Escrow Holder is hereby authorized and instructed to pay for the billings as handed/delivered to Escrow Holder by the Seller, Seller's Agent or Company/Person acting on behalf of the Seller, from proceeds due Seller at the close of escrow. All billings being paid thru escrow are to be approved by the Seller.

**10.     COSTS AND CHARGES:** From funds due Seller at the close of escrow, deduct and pay encumbrances of record, plus accrued interest,

BUYERS INITIALS _____          SELLERS INITIALS _____

charges and prepayment penalties, if any, bonds and/or assessments, and any delinquent monthly installment(s) on existing encumbrance(s) as disclosed by beneficiary statement(s), and any county and/or city transfer fees, costs and charges in this transaction which may include, but are not limited to: the Owner's Policy of title insurance, documentary transfer tax, reconveyance fees, recording fees, Seller's customary escrow fee (also referred to as settlement agent fee), escrow processing fee, fees for preparation, notarization and recording of documents as necessary on Seller's behalf, Seller's portion of the sub-escrow fee, and Broker compensation as per separate agreement.

Buyer agrees to pay all Buyer's usual costs and charges in this transaction which may include, but are not limited to: Buyer's customary escrow fee (also referred to as settlement agent fee), escrow processing fee, escrow loan tie-in fee, all fees and charges in connection with the new loan(s), Buyer's title fees, Buyer's portion of the sub-escrow fee, sign-up service fee or notary fees, and recording charges.

**11.      STATUTE OF LIMITATIONS:**   These instructions are to be construed and interpreted according to California Law. NO ACTION SHALL LIE AGAINST ESCROW HOLDER FOR ANY CLAIM, LOSS, LIABILITY OR ALLEGED CAUSE OF ACTION OF ANY KIND OR NATURE WHATSOEVER, HOWEVER CAUSED OR OCCURRED, IN THIS ESCROW TRANSACTION OR IN CONNECTION WITH THE HANDLING OR PROCESSING OF THIS ESCROW TRANSACTION, UNLESS BROUGHT WITHIN TWELVE (12) MONTHS AFTER THE CLOSE OF ESCROW OR ANY CANCELLATION OR TERMINATION OF ESCROW FOR ANY REASON WHATSOEVER.

**12.      WRITTEN INSTRUCTIONS REQUIRED:**   Pursuant to California Civil Code Section 1624, no notice, demand, agreement, addendum, supplemental escrow instruction, or escrow amendment shall be effective unless given in writing by the Parties affected thereby. Escrow Holder shall not act upon or consider such supplemental instruction to have any validity until same is fully executed and delivered to Escrow Holder by all Parties concerned.

**13.      AUTHORIZATION TO ACCEPT ELECTRONIC SIGNATURES AND DOCUMENTS:**   In accordance with California's Uniform Electronic Transactions Act (the "Act"), the Parties hereby authorize Escrow Holder to accept electronic and/or digital signatures and records, transmitted via facsimile or other electronic means (collectively "electronic signatures") into this escrow as originals. The Parties expressly agree that this transaction can be conducted electronically, at the option of the Parties, to the fullest extent possible under the Act and recording laws. The Parties agree to transmit original, wet signatures on (1) all documents to be recorded, (2) all documents excluded from being enforceable under the Act, and (3) all documents required to be in original form by any regulatory agency. The Parties agree to verify any and all electronic signatures upon request of Escrow Holder.

**14.      AGREEMENTS OUTSIDE OF ESCROW:**   Whenever written and/or oral agreements are made between the Parties for the payment of any sum, the delivery of any document, or the performance of any act "outside of escrow", Escrow Holder shall have no responsibility therefore, shall not be concerned therewith, and is specifically relieved of any obligation relative thereto.

**15.      NO DUTY TO DISCLOSE OR INSPECT:**   Escrow Holder's sole duty relative to disclosures shall be the payment of invoices presented to Escrow Holder. Escrow Holder is not to be concerned with the giving of any disclosures except as expressly required to be given by an escrow service provider pursuant to Federal or State law. Neither will Escrow Holder conduct any lien search or title searches relative to personal property in connection with the sale or transfer of personal property through this escrow transaction, if any. Escrow Holder urges the Parties to seek appropriate counsel from an attorney or licensed broker to ascertain what disclosures and/or laws, if any, need to be complied with prior to close of escrow. The Parties jointly and severally agree to indemnify and hold harmless Escrow Holder by reason of any misrepresentation or omission by a Party or agents or failure of the Parties to this escrow transaction to comply with the rules and/or regulations of any governmental agency, whether state, federal, county, municipal, or otherwise and Escrow Holder is not to be concerned with enforcement of same. If presented with an invoice in connection with any disclosure Escrow Holder is authorized to pay same without further instructions. Escrow Holder will make no physical inspection of the real property and/or personal property that is the subject of this escrow transaction, and Escrow Holder is not to be concerned with or liable for the condition of same.

**16.      FEDERAL TAX REPORTING:**   The Parties acknowledge their awareness of the fact that, upon transfer of property, Escrow Holder must provide information pertaining to the escrow transaction to the Internal Revenue Service as required by Internal Revenue Code Section 6045(e) relative to the production of 1099 forms. The Parties agree to provide Escrow Holder all information necessary to produce the tax reporting documentation in compliance with Federal Law.

**17.      FEDERAL TAX WITHHOLDING:**   The sale of a U.S. real property interest by a foreign person is subject to the Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA") income tax withholding. This law authorizes the United States to tax foreign persons on the sale of U.S. real property interests. Persons purchasing U.S. real property interests from foreign persons may be required to withhold a portion of the purchase price. Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The purchaser/Buyer is liable if the withholding is not made when required. The Parties agree to execute and deliver to Escrow Holder any instrument, affidavit and statement or to perform any act reasonably necessary to carry out the provisions of FIRPTA and regulations promulgated thereunder.

**18.      STATE TAX WITHHOLDING:**   The following disclosure is being provided pursuant to California law for all escrow transactions wherein a transfer of title is being completed as part of the escrow transaction. In accordance with Section 18662 of the Revenue and Taxation Code, a Buyer may be required to withhold an amount equal to 3% percent of the sale price, or an optional gain on sale withholding amount certified by the Seller in the case of a disposition of California real property interest by either: (a) A Seller who is an individual, trust, estate, or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the Sellers; or (b) A corporate Seller that has no permanent place of business in California immediately after the transfer of title to the California property. The buyer may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500). However, notwithstanding any other provision included in the California statutes referenced above, no Buyer will be required to withhold any amount or be subject to penalty for failure to withhold if any of the following apply: (a) The sale price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000); (b) The Seller executes a written certificate, under the penalty of perjury, certifying that the Seller is a corporation with a permanent place of business in California; (c) The Seller, who is an individual, trust, estate, or a corporation without a permanent place of business in California, executes a written certificate, under the penalty of perjury, of any of the following: (i) The California real property

BUYERS INITIALS _____                              SELLERS INITIALS _____

Everest Escrow, Inc.                                                Date: **May 30, 2018**
                                                                   Escrow No.: CA6084-JS

being conveyed is the seller's or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code (IRC)); (ii) The last use of the property being conveyed was use by the transferor as the transferor's principal residence (within the meaning of IRC Section 121); (iii) The California real property being conveyed is, or will be, exchanged for property of like kind (within the meaning of IRC Section 1031), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under IRC Section 1031; (iv) The California real property has been compulsorily or involuntarily converted (within the meaning of IRC Section 1 033) and the Seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain for California income tax purposes under IRC Section 1033; or (v) The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes. The Seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.

**19.      SUPPLEMENTAL PROPERTY TAXES:      PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1102.6C, THE FOLLOWING DISCLOSURE IS HEREBY PROVIDED: CALIFORNIA PROPERTY TAX LAW REQUIRES THE COUNTY TAX ASSESSOR TO REVALUE REAL PROPERTY AT THE TIME THE OWNERSHIP OF THE PROPERTY CHANGES. BECAUSE OF THIS LAW, BUYER MAY RECEIVE ONE OR TWO SUPPLEMENTAL TAX BILLS, DEPENDING ON WHEN ESCROW CLOSES. IT IS THE BUYER'S RESPONSIBILITY TO PAY SAID SUPPLEMENTAL TAX BILLS DIRECTY TO THE COUNTY TAX COLLECTOR. IF BUYER OBTAINED NEW FINANCING AND THE PROPERTY TAX PAYMENTS ARE TO BE PAID THROUGH AN IMPOUND ACCOUNT, THE BUYER MUST CONTACT THE LENDER OR LOAN SERVICER TO INQUIRE IF THE BUYER IS TO PAY THE SUPPLEMENTAL TAX BILL OR IF THE SUPPLEMENTAL TAX BILL WILL BE PAID FROM THE IMPOUND ACCOUNT. BUYER UNDERSTANDS THAT SUPPLEMENTAL TAX BILLS ARE NOT MAILED TO THE LENDER OR LOAN SERVICER. BUYER IS ADVISED TO CONTACT THE TAX COLLECTOR AND/OR ASSESSOR WITH ALL QUESTIONS CONCERNING SUPPLEMENTAL TAX BILLS.**

In the event that subject property has been conveyed to a new party within the last 18 months or improvements have been performed creating a possible reassessment and NO Supplemental tax bill has been issued prior to the close of escrow, Buyer and Seller herein agree that any and all tax bills received after the close of escrow will be handled between Buyer and Seller outside of escrow and Escrow Holder is not to be concerned and/or liable and is relieved of any responsibility in connection with the payment or proration of same.

**20.      PERSONAL PROPERTY TAXES:** Escrow Holder is not to be held responsible in any way whatsoever for any personal property taxes which may be assessed against any former or present owner of the property that is the subject of this escrow transaction, nor for the corporation or license tax of any corporation as a former or present owner.

**21.      PRELIMINARY CHANGE OF OWNERSHIP REPORT:** California Revenue and Taxation Code Section 480.3 requires that a Preliminary Change of Ownership Report be completed and certified by the transferee and filed concurrently with the recording of any document that reflect a change of ownership in real property. The Parties herein agree to complete and sign said report and deliver same to Escrow Holder for filing, as necessary. The Parties understands and acknowledges that the recorder's office may charge a n on-refundable fee of twenty dollars ($20.00) should the fully completed/certified report not accompany the conveyance document If the recorder's office charges such a fee, the Party benefitted by the recording of the transfer document shall be charged the fee at close of escrow. In such event, a Standard Change of Ownership Statement will be mailed to the transferee by the office of the county assessor. Further, if Buyer fails to file said form upon the request of the county assessor after the close of escrow, severe penalties may be assessed against the Buyer.

**22.      PROPRIETARY INFORMATION:** Escrow Holder is relieved of any duty, responsibility, and/or liability relative to disclosure of the proprietary information of the Parties and/or agents to this or any other escrow transaction. Such propriety information includes, but is not limited to, any (A) sale, resale, loan, exchange, or other transaction involving the real property and/or personal property that is the subject of this escrow transaction or (B) benefit, including but not limited to financial gain or profit, involving the real property and/or personal property that is the subject of this escrow transaction. Escrow Holder shall be relived of any and all liability if such proprietary information is disclosed as necessary for Escrow Holder to comply with the instructions of the Parties or if requested by a lender, agent, governmental agency, or any other entity entitled to such propriety information. Escrow Holder is specifically authorized to furnish copies of all escrow instructions, amendments thereto, preliminary title reports, closing statements and/or related documentation to the agents and/or attorneys representing any party to this escrow transaction, as may be requested by them, without obtaining any further authorization from Buyer or Seller.

**23.      NOTIFICATION OF DISHONORED CHECKS:** If any check submitted to Escrow Holder is dishonored upon presentment for payment, Escrow Holder is authorized to notify all Parties and/or their respective agents of such nonpayment. The Party receiving credit for the deposit agrees to pay a reasonable fee to Escrow Holder for the returned check.

**24.      ACCEPTANCE AND VERACITY OF SIGNATURES:** Escrow Holder shall not be responsible or liable in any manner for the sufficiency or correctness as to form, manner of execution, or validity of any document deposited with Escrow Holder relative to the identity, authority, or rights of any person executing the same. All signatures submitted into this escrow transaction shall be construed as unconditional approval of the within document as to form, content, terms, and conditions. Escrow Holder shall have no obligation to verify, and will not verify, the authenticity of any signature on any document made relative to this escrow transaction. Escrow Holder shall not be liable or responsible for any loss that may occur because of forgeries, fraud, or false representations made or involving the Parties to this escrow transaction, any third Parties, the agents or any other person or entity.

**25.      ACCEPTABILITY OF COUNTERPARTS:** These instructions may be executed in counterparts, each of which shall be deemed an original regardless of the date of its execution and delivery. All such counterparts together shall constitute one and same document.

**26.      STANDARDIZED FORMS:** Escrow Holder is to use Escrow Holder's usual document forms or the usual forms of any reliable forms company or any title company and in the instructions insert dates and terms on the instruments if incomplete when executed. Escrow Holder is authorized to use any standardized, preprinted form in order to comply with these instructions. Escrow Holder is authorized to use Escrow Holder's own form or any form produced by any reliable forms company or any title company. Excepting Escrow Holder's own form, Escrow Holder shall not be liable for the correctness or sufficiency of such standardized preprinted forms.

BUYERS INITIALS _____                              SELLERS INITIALS _____

Everest Escrow, Inc.

Date: **May 30, 2018**
Escrow No.: **CA6084-JS**

27.    **NEW FINANCING:** Escrow Holder is not to be responsible or concerned with the terms of any new financing obtain by Buyer or the contents of any loan documents. Escrow Holder's duties with regard to the loan documents is to receive the loan documents, provide the loan documents to the appropriate Parties for execution, and transmit the executed loan documents to the lender. The Parties understand and agree that Escrow Holder is not involved or concerned with the approval or processing of any loan or the contents and effect of any loan documents prepared by a lender. Escrow Holder is not responsible for any lender's instructions which require Escrow Holder to perform obligation or duties beyond those required by law or which requires Escrow Holder to assume liability for the lender's regulatory duties and responsibilities.

28.    **SETTLEMENT STATEMENT:** The Parties are hereby made aware that the lender providing new financing to the Buyer will require a copy of the estimated and/or final combined Settlement Statement and/or records showing all deposits and disbursement occurring in connection with this escrow transaction. Escrow Holder is hereby authorized and instructed by the Parties to release the combined Settlement Statement to the Buyer's lender. Seller is aware and understands that disbursements specific to the Seller may be disclosed to the Buyer and Buyer's Agent as part of the Buyer's Closing Disclosure prepared by and provided to the Buyer by the Buyer's lender.

29.    **SELLER CLOSING DISCLOSURE:** The Parties are hereby made aware that lenders providing new financing to the Buyer may require a copy of the Seller's Closing Disclosure and proof of Seller's receipt of same prior to the Buyer's execution of loan documents. Escrow Holder is responsible for preparing and providing said Disclosure to the Seller. In the event there are any changes to the fees and charges on the date of close of escrow, Escrow Holder will prepare and provide Seller with a Corrected Closing Disclosure and the lender with a copy of same.

30.    **PROPERTY INSURANCE:** Excluding transactions whereby the subject property is a parcel of vacant land, Buyer is made aware that, prior to close of escrow, property insurance coverage should be obtained with sufficient liability and replacement cost. If the Buyer is obtaining new financing evidence of insurance coverage will be a condition of the loan prior to funding and must meet lender's requirements. Buyer shall deposit sufficient funds to pay for the first year's premium per invoice submitted by insurance agent or a paid receipt. In the event subject property is covered by a blanket master policy of insurance, Escrow Holder is to obtain a certificate of insurance from the insurance company provided by the Homeowners Association and/or Management Company. If Buyer is purchasing the subject property as an all cash transaction, without financing, Escrow Holder shall have no responsibility whatsoever with regard to property insurance.

31.    **TITLE INSURANCE:** Escrow Holder shall order title insurance from the title company designated by the Parties. Escrow Holder shall provide a copy of the preliminary report issued by the title company to the Buyer, real estate agents and/or any lender without liability as to its contents. Escrow Holder does not verify or confirm the legal description of subject property provided in the report by the title company. The Parties acknowledge that the title insurance policies to be issued by the title company shall be delivered directly from the designated title company to the appropriate Parties after the close of escrow. The Parties agree that matters regarding that title insurance are between the title company and the insured Party and not Escrow Holder.

32.    **AUTHORIZATION TO USE SUB-ESCROW AGENT:** Escrow Holder is authorized to use the title company as a sub-escrow agent for the handling of funds and documents in this escrow transaction. Escrow Holder is to comply with all sub-escrow agent's instructions and requirements, and Escrow Holder is authorized to deliver funds or documents to said sub-escrow agent at any time during the course of this escrow transaction as Escrow Holder deems appropriate. The Parties agree to pay the fee for such sub-escrow service as charged by the title company.

33.    **BENEFICIARY DEMANDS AND STATEMENTS:** From funds due Seller or in the case of a refinance escrow the Borrower, Escrow Holder is authorized to pay at the close of escrow, any encumbrances of record, plus accrued interest, statement/demand fee, fax fee, reconveyance fee, miscellaneous charges, and late fees due, if any, on existing encumbrance(s) as disclosed by a beneficiary demand or statement without additional approval. Should a Party wish to review and approve any such beneficiary demand or statement the Party shall deliver separate and specific written instruction to Escrow Holder prior to the close of escrow. Escrow Holder is not responsible for the contents or accuracy of any beneficiary demand or statement delivered to it by the beneficiary. The Parties are aware that payoffs of encumbrances are done by the insuring title company, not Escrow Holder, and agree to seek any redress directly from the beneficiary and/or title company should a dispute arise regarding said payoff. The Parties are aware that some lenders require payment of loans to be in the form or a wire or a check to be delivered to offices outside of the area and/or outside of the state. The Parties are advised that interest will continue to accrue on any outstanding loans until the loan is paid in full regardless of the date of close of escrow, therefore, additional days of interest may be collected past the closing date to allow for travel and posting of the payoff funds by the beneficiary. The title company may charge messenger fees, wire fees, and/or overnight fees, which the benefitted Party agrees to pay at close of escrow.

34.    **LINE OF CREDIT PAYOFF INDEMNIFICATION AND CANCELLATION:** The undersigned Parties hereby indemnify and hold the title company and Escrow Holder harmless from incurring any costs of additional charges, interest, and advances made but not disclosed on the beneficiary demand or statement provided for the payoff of that certain equity line of credit deed of trust (hereinafter "line of credit") shown on preliminary title report, if any. The Parties warrant and represent that instructions to the beneficiary have been made to freeze the line of credit, that no advance on the line of credit has been made since the opening of this escrow transaction, and that no advance will be made on the line of credit prior to close of escrow. In the event, after receipt of payoff, the beneficiary makes demand for additional funds, the undersigned Parties agree to deposit those funds immediately with the title company or Escrow Holder upon request of said funds and authorize the title company to utilize those funds to effectuate the close of the line of credit. Upon payoff of the line of credit, the title company will be responsible for requesting that the beneficiary cancel said line of credit.

35.    **PRORATIONS AND ADJUSTMENTS:** Escrow Holder is instructed to make all prorations and adjustments on the basis of a thirty (30) day month. Escrow Holder is to use information contained on latest available tax statement or tax figures provided by the title company in the preliminary report, rental statement, beneficiary's statement, or other statement as delivered to Escrow Holder for the prorations provided for herein.

36.    **RECORDING OF DOCUMENTS:** The Parties authorize the recordation of any instrument delivered through this escrow transaction if necessary or proper for the issuance of the required policies of title insurance or as necessary for close of escrow. Recording fees shall be charged to the account of the benefited Party unless instructed otherwise by the Parties in writing.

37.    **DISBURSEMENT OF FUNDS AND DELIVERY OF DOCUMENTS:** All disbursements are to be made in the form of a check from

BUYERS INITIALS _____          SELLERS INITIALS _____

*Page 6*

the Escrow Holder's trust account unless instructed otherwise in writing. Escrow Holder will not indemnify any payee or guarantee signatures of any person or entity to any financial institution. Generally, Escrow Holder will disburse funds from the escrow file, including net proceeds, on the business day immediately following the date the escrow closes; however, there are circumstances which may arise wherein said disbursements could be delayed by one or two business days. Any funds disbursed during or at the close of escrow will be issued jointly to the Parties designated as payee unless Escrow Holder is instructed otherwise in writing by all designated payees. The funds representing sale proceeds or loan proceeds from a refinance will be disbursed jointly to all persons who were the record owners of the subject property. All disbursements of funds and/or delivery of other documents or instruments concerning this escrow transaction will be mailed to the entitled Party by regular first class mail, postage prepaid, at the last address provided to Escrow Holder. However, at Escrow Holder's discretion, Escrow Holder may send funds and/or closing documents by certified or registered mail, overnight delivery, or messenger. The closing date of escrow shall be the date in which the Grant Deed and other documents are filed for record by the Title Company with the County Recorder's Office.

**38.    REPEAT CUSTOMERS:**   Parties acknowledge, agree, and understand that Escrow Holder may provide a fee discount to customers who have completed one or more escrows with Escrow Holder within the last two (2) years, upon request. Said discount will be provided solely to the repeat customer irrespective of the agreement of the Parties relative to the division of escrow fees.

**39.    ESCROW FEE:**   The Parties acknowledge, agree, and understand that Buyer or Seller may have negotiated a discounted escrow fee and therefore the escrow fee charged to each party may not be the same. Escrow Holder shall have the absolute right to approve or decline any request for a discount.

**40.    SEVERABILITY:**   In the event any escrow instruction or supplemental instruction in this escrow transaction, including these general provisions, is held invalid by judicial proceedings, the remaining shall continue to be operative and enforceable.

**41.    CONFLICTING INSTRUCTIONS:**   If conflicting demands or notices are made or served upon Escrow Holder or any controversy arises between the Parties or with any third person arising out of or relating to this escrow transaction, Escrow Holder shall have the absolute right to withhold and stop all further proceedings in, and in performance of, this escrow transaction until Escrow Holder receives written notification satisfactory to Escrow Holder of the settlement of the controversy by written mutual agreement of the Parties, or by the final order or judgment of a court of competent jurisdiction.

**42.    MUTUAL CANCELLATION INSTRUCTION REQUIREMENTS:**   The Parties acknowledge that they are on notice that Escrow Holder shall exercise its discretion to require mutual or matching cancellation instructions instructing Escrow Holder on how the deposit is to be released, signed by all Parties and deposited with Escrow Holder prior to releasing any deposit held by Escrow Holder relative to this escrow transaction. Escrow Holder is under no obligation to comply with the terms of item 14 H. of the California Residential Purchase Agreement and Joint Escrow Instructions in the event either party fails to execute mutual instructions to cancel escrow and one Party makes written demand to Escrow Holder for the deposit.

**43.    CANCELLATION FEES:**   In the event of cancellation or any other termination of this escrow transaction, for any reason, the Parties agree to pay Escrow Holder for any costs or expenses Escrow Holder may have incurred or become obligated for pursuant to this escrow transaction and a reasonable escrow cancellation fee for the services performed to date. The Parties agree that said charges for costs, expenses and fees may be apportioned between the Parties in a manner which Escrow Holder, in Escrow Holder's sole discretion, consider equitable, and that Escrow Holder's decision in. that regard will be binding and conclusive upon the Parties unless specifically agreed to or determined by a court of competent jurisdiction. Seller agrees to deposit in escrow, if applicable, funds to cover costs incurred by the Seller. In the event of failure to pay costs, expenses, and fees due hereunder, on demand, the Parties agree to pay reasonable fees for any attorney services which may be required to collect such fees or expenses. Upon payment of such cancellation fees, Escrow Holder is authorized to return documents and funds to the respective Parties depositing same, or for whose benefit an unconditional deposit was made; or to void executed instruments as appropriate.

**44.    TIME IS OF THE ESSENCE:**   Time is of the essence in these instructions. In the event that the conditions of this escrow transaction have not been complied with at the expiration of the time provided for herein, or any extension thereof, Escrow Holder is instructed to complete the same at the earliest possible date thereafter, unless written demand upon Escrow Holder to cancel this Escrow or for the return of the money and/or instruments deposited by one or more Parties. If the date by which the parties' performances are due shall be other than Escrow Holder's regular business day, such performances shall be due on Escrow Holder's next succeeding business day.

**45.    ABANDONMENT OF ESCROW TRANSACTION:**   Escrow Holder duties and functions related to this escrow transaction shall terminate six (6) months following the date last set for close of escrow unless the escrow transaction has closed or cancelled. At such time, Escrow Holder shall have no further obligations as Escrow Holder except to disburse funds and documents pursuant to written instructions and to interplead or otherwise dispose of funds and documents in accordance with a validly issued and validly served order from a court of competent jurisdiction.

**46.    UNCASHED CHECKS:**   In the event any check(s) issued through this escrow transaction related hereto are uncashed or unnegotiated ("uncashed") Escrow Holder will make every effort to contact the payee and coordinate negotiation of the check(s). The Parties acknowledge that Escrow Holder incurs significant expense in tracking uncashed checks, canceling and reissuing checks, and maintaining bank and accounting records of such checks. Therefore, if re-issuance of the check is necessitated, Escrow Holder will require an instruction authorizing such re-issuance and is authorized to charge an additional services fee of twenty-five dollars ($25.00) which will be deducted from the payee's reissued check(s).

**47.    AUTHORIZATION TO INTERPLEAD FUNDS:**   The Parties acknowledge that Escrow Holder has an absolute legal right to file a court action in interpleader. In the event such an action is filed, the Parties herein jointly and severally agree to pay all escrow fees, title fees, court costs, and litigation expenses, including attorney's fees, incurred in connection therewith, the amount thereof to be fixed and judgment to be reached by the court. . Upon filing of such action, Escrow Holder is fully released and discharged from any further performance of duties under the terms of this Escrow.

**48.    RIGHT TO RESIGN:**   At any time prior to the close of escrow, Escrow Holder, at its sole and absolute discretion and without liability to the Parties to this escrow transaction, may withdraw and resign from acting as Escrow Holder after providing ten (10) days prior written notice to the Parties at their last known addresses of Escrow Holder's decision to withdraw and resign. In such event, Escrow Holder shall be entitled to

BUYERS INITIALS _____                    SELLERS INITIALS _____

Everest Escrow, Inc.

Date: **May 30, 2018**
Escrow No.: **CA6084-JS**

reasonable compensation for its escrow services performed and for all costs and expenses incurred in the resignation, including, but not limited to, attorneys' fees. Upon resignation, Escrow Holder shall return to the Parties who deposited the same the balance of any funds it holds along with any property or documents in its possession. Alternatively, at the mutual instruction of the Parties, Escrow Holder shall deliver the funds, property, and documents to a new Escrow Holder.

49.    **DESTRUCTION OF DOCUMENTS:**   Escrow Holder is authorized to destroy or otherwise dispose of any and all documents, papers escrow instructions, correspondence and records or other material constituting or pertaining to this escrow at any time after five (5) years from the date of close of escrow, cancellation of this transaction, or the date of the last activity (whichever comes first), without liability and without further notice to the Parties.

50.    **ESCHEATMENT:**   Any and all funds remaining in escrow three (3) years after the close of escrow or cancellation of this escrow transaction will be escheated to the State of California pursuant to the Unclaimed Property Law codified in California Code of Civil Procedure Section 1518.

51.    **PRIVACY NOTICE:**   This notification is in compliance with our obligations to comply with federal and state law to safeguard the Parties' non-public personal information. Escrow Holder collects non-public personal information about the Parties from the following sources; a) Information Escrow Holder receives from the Parties on applications or other forms; b) Information about the Parties' transactions with Escrow Holder, Escrow Holder's affiliates, or others involved in the processing of the transaction; and c) Information Escrow Holder receives from a consumer reporting agency. Escrow Holder does not disclose any non-public personal information about customers or former customers to anyone, except as permitted by law. Escrow Holder restricts access to non-public information about the Parties to those employees who need to know that information to provide products or services to the Parties. Escrow Holder maintains physical, electronic and procedural safeguards that comply with federal and state regulations to guard the Parties' non-public personal information. By signing below, the undersigned Parties acknowledge that they have read and received a copy of this notification.

52.    **NOTARY HOLD-HARMLESS AND INDEMNITY AGREEMENT:** The Parties are advised that notarial services being perform inside or outside of an office of Escrow Holder, even if performed by an employee of Escrow Holder, are not being provided by Escrow Holder. Instead, said services are being perform by the notary in their capacity as a notary public.  The Parties acknowledge that, relative to notarial services being performed inside or outside of the office of Escrow Holder, the notary is acting in the capacity of a notary public and not as an employee of Escrow Holder.  Escrow Holder accepts no liability and/or responsibility for notarial services being performed inside or outside of an office of Escrow Holder.  Payment for notarial services performed inside or outside an office of Escrow Holder will be paid directly to the notary public, and not to Escrow Holder.  The Parties agree to hold Escrow Holder harmless and indemnify Escrow Holder from and against all claims, including, but not limited to damages, liabilities, costs and attorney fees, and agrees to defend any action or litigation as may arise as a result of any notarization performed by a notary outside of the office of Escrow Holder.

53.    **ESCROW HOLDER PROHIBITTED FROM GIVING LEGAL OR FINANCIAL ADVICE:**   The Parties acknowledge and understand that Escrow Holder is not authorized to practice the law nor does Escrow Holder give financial advice. The Parties are advised to seek legal and financial counsel and advice concerning the effect of this escrow transaction. The Parties acknowledge that no representations have been made by Escrow Holder about the legal sufficiency, legal consequences, financial effects, or tax consequences of the within escrow transaction.

BUYERS INITIALS _____                    SELLERS INITIALS _____

# EXHIBIT "4"

File No.: CA6084-JS
Officer/Escrow Officer: Jennifer Stipe

Printed Date/Time: 06/14/2018 - 4:59:35PM
Page    1  of  2
Closing Date:        07/30/2018
Disbursement Date:  07/30/2018

Buyer/Borrower: FR Nest Holdings LLC
7153 Bella Strada Drive, Fontana, CA  92336

Seller: Superior Boiler Repairs, Inc.
8204 Garfield Avenue, Bell Gardens, CA  90201

Property: 8204 Garfield Avenue, Bell Gardens, CA  90201

| DESCRIPTION | | DEBITS | CREDITS |
|---|---|---|---|
| TOTAL CONSIDERATION | | | 1,365,000.00 |
| **PRORATIONS/ADJUSTMENTS:** | | | |
| Property Tax @ 5,465.73 per 6 month(s) 7/01/2018 to 7/30/2018 | | 880.59 | |
| **COMMISSION(S):** | | | |
| Listing Broker: Realty One Group, Inc. | | 54,600.00 | |
| Selling Broker: Realty One Group, Inc. | | 27,300.00 | |
| **TITLE CHARGES** | | | |
| Owner's Premium for 1,365,000.00: First American Title | | 2,628.00 | |
| Sub-escrow fee: First American Title | | 62.50 | |
| County Transfer Tax: First American Title | | 1,501.50 | |
| Wire Fees: First American Title | | 30.00 | |
| **ESCROW CHARGES TO: Everest Escrow, Inc.** | | | |
| Settlement Agent Fee | | 3,000.00 | |
| Processing Fee | | 100.00 | |
| **LOAN PAYOFF: Opus Bank** | | | |
| Principal Balance | 1,058,615.80 | | |
| Interest To 7/31/18 | 81,484.30 | | |
| Late Charges | 12,860.89 | | |
| Statement / Demand Fee | 30.00 | | |
| Reconveyance Fees x 3 | 185.00 | | |
| Recording Fee x 3 | 46.00 | | |
| Consultant | 1,950.00 | | |
| Legal Fees | 5,600.00 | | |
| Appraisal Fee | 9,175.00 | | |
| UCC Release Fee | 26.00 | | |
| Fax Fee | 20.00 | | |
| CT Lien Solutions (UCC) | 36.62 | | |
| Total Loan Payoff | | 1,170,029.61 | |
| **TAXES:** | | | |
| Delinquent Property Taxes to: Los Angeles County Tax Collector | | 12,034.60 | |
| Estimated additional penalties/charges to: Los Angeles County Tax Collector | | 500.00 | |
| **ADDITIONAL DISBURSEMENTS:** | | | |
| Natural Hazard Report Fee: Disclosure Save | | 105.00 | |
| Building Homes and Jobs Act Fee: County of Los Angeles | | 75.00 | |
| **SUBTOTALS** | | 1,272,846.80 | 1,365,000.00 |
| **DUE TO SELLER** | | 92,153.20 | |
| **TOTALS** | | 1,365,000.00 | 1,365,000.00 |

Superior Boiler Repairs, Inc.

**Estimated**

File No.:  CA6084-JS

**Property**: 8204 Garfield Avenue, Bell Gardens, CA  90201

_____

Jennifer Stipe, Escrow Officer

# EXHIBIT "5"

OpusBank

BUILD YOUR MASTERPIECE

June 13, 2018

**DEMAND**

Ms. Jennifer Stipe                                                VIA FAX:  (760) 683-6537
Everest Escrow
2701 Laker Avenue West, Suite 148
Carlsbad, CA 92010

**Escrow No.:** CA6084-JS
**Loan No.:**   4283026886
**Borrower:**   Superior Boiler Repairs, Inc.
**Collateral:**  2 Deeds of Trust and UCC Filing

This **DEMAND** is being sent in response to your request for a pay-off statement.  Listed below is the breakdown.

| | | |
|---|---|---:|
| Principal Balance: | $ | 1,058,615.80 |
| Interest To 07/31/18: | $ | 81,484.30 |
| Late Charges: | $ | 12,860.89 |
| Demand Letter: | $ | 30.00 |
| Reconveyance Fee X 3: | $ | 185.00 |
| Recording Fee X 3 | $ | 46.00 |
| Consultant: | $ | 1,950.00 |
| Legal Fees: | $ | 5,600.00 |
| Appraisal Fee: | $ | 9,175.00 |
| UCC Release Fee: | $ | 26.00 |
| Fax Fee: | $ | 20.00 |
| CT Lien Solutions (UCC): | $ | 36.62 |
| TOTAL AMOUNT DUE FOR 07/31/18: | $ | 1,170,029.61 |

★ **Please call to verify payoff figures prior to payoff** ★

If payment is not received by <u>July 31, 2018</u> interest will accrue at <u>$159.52</u> per day until date of payment is received by our office.

Should you have any questions, please contact Scott Krochmalny.  He can be reached at (949) 224-8843, or skrochmalny@opusbank.com.

Thank you,                               THIS DEMAND WILL EXPIRE ON 07/31/18

Robert Apodaca                           **WIRE INFORMATION:**
Senior Loan Representative                **Opus Bank**
                                          **19900 MacArthur Blvd. 12th Floor**
                                          **Irvine, CA 92612**
                                          **ABA #122239270**
                                          **Acct. 4283026886 – Superior Boiler Repairs, Inc.**

**UPON PAY-OFF WE WILL RELEASE OUR COLLATERAL**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10900 183rd Street, Suite 270, Cerritos CA 90703

A true and correct copy of the foregoing document entitled (*specify*):  DEBTOR-IN-POSSESSION'S MOTION FOR ORDER: (1) APPROVING SALE OF REAL PROPERTY; (2) APPROVING PAYMENT OF REAL ESTATE COMMISSION AND OTHER RELATED COSTS; DECLARATION OF OMAR GAMARRA

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/15/2018           , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)   06/15/2018           , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

THE HONORABLE SANDRA KLEIN
U.S. Bankruptcy Court
255 East Temple Street, Ctrm 1575
Los Angeles CA 90012

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)                   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/15/2018 | LARRY FIESELMAN | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.